Jason D. Lamm (018454)
Law Office of Jason Lamm
6245 North 24th Pkwy, Ste. 208
Phoenix, AZ  85016-2030
Tel: (602) 222-9237
Fax: (602) 222-2299
Email:  jlamm@cyberlawaz.com

David J. Don (016462)
LAW OFFICE OF DAVID J. DON, PLLC
301 E. Bethany Home Rd., Suite B-100
Phoenix, Arizona 85012
Tel:  480-948-1212
Fax: 480-696-7756
Email: david@azcivilrights.com

*Attorneys for Plaintiff Leslie A. Merritt, Jr.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie A Merritt, Jr., a single man,<br><br>Plaintiff,<br>vs.<br>State of Arizona, a body politic; Bill Montgomery, the elected Maricopa County Attorney, in his official and individual capacities; Maricopa County, a body politic; Heston Silbert, in his individual capacity; Christopher Kalkowski, in his individual capacity; Frank Milstead, in his individual capacity; Ken Hunter, in his individual capacity; Kelly M. Heape, in his individual capacity; Jennifer Pinnow, in her individual capacity, Anthony Falcone, in his individual capacity; Edward Leiter, in his individual capacity; Vanessa Losicco, in her individual capacity.<br><br>Defendants. | Case No.:  CV17-4540-PHX-DGC<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff Leslie A. Merritt, Jr. alleges as follows:

## JURISDICTION AND VENUE

1.     This action arises under 42 U.S.C. § 1983 based on violations of the Fourth and Fourteenth Amendments to the United States Constitution and the common law of the State of Arizona.

2.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and supplemental jurisdiction under 28 U.S.C. § 1367.

3.     Venue is proper as the actions arising from this case occurred in Maricopa County, Arizona.

4.     Plaintiff demands a trial by jury.

## PARTIES

5.     Plaintiff Leslie Merritt, Jr. is a single man and a current resident of Clay County, Florida.

6.     Defendant State of Arizona is a body politic with administrative jurisdiction over the Arizona Department of Public Safety (DPS) and the DPS Central Regional Crime Lab (CRCL).  The State is responsible for the administration, operation, maintenance, policies, procedures and functions of DPS and the CRCL.  The State is the employer, master, and/or principal of each individual DPS Defendants and the other DPS and CRCL personnel who participated in the investigation, arrest, and/or criminal prosecution of Leslie Merritt, Jr.

7.     The following individual Defendants work at the relevant times to this lawsuit in the stated capacities with the Arizona Department of Public Safety: DPS Deputy

Director Heston Silbert; DPS criminalist Christopher Kalkowski; DPS Director Col. Frank Milstead; DPS Lt. Col Ken Hunter; DPS Major Kelly Heape; DPS Captain Jennifer Pinnow; and DPS Detective Anthony Falcone (collectively "DPS Defendants"). Each DPS Defendant is sued in his or her individual capacity. Each DPS Defendant acted under color of state law.

8.    Defendant Bill Montgomery, in his official capacity, is and was, at all times relevant to this lawsuit, the elected Maricopa County Attorney.  As the Maricopa County Attorney, Montgomery is responsible for the administration, operation, maintenance, policies, procedures and functions of the Maricopa County Attorneys' Office, the implementation of policies and procedures, the training and supervision of staff, and the provision of criminal justice to all residents of Maricopa County, including Leslie Merritt, Jr.  Defendant Montgomery is the employer, master, and/or principal of each individual Deputy County Attorney and staff member in the Maricopa County Attorney's Office who participated in the investigation, arrest, and/or criminal prosecution of Leslie Merritt, Jr.

9.    The following individual Defendants work in the stated capacities with the Maricopa County Attorney Office:  Maricopa County Attorney Bill Montgomery, Deputy County Attorney Edward Leiter, and Deputy County Attorney Vanessa Losicco (collectively "MCAO Defendants").  Each MCAO Defendant is sued in his or her individual capacity.  Each MCAO Defendant acted under color of state law.

10.   Defendant Maricopa County is a body politic.  Maricopa County is also the employer, master, and/or principal of each individual Deputy County Attorney and

staff member in the Maricopa County Attorney's Office who participated in the investigation and/or criminal prosecution of Leslie Merritt, Jr.

## COMMON FACTS

### A. The DPS Defendants undertook to investigate the I-10 Freeway Shooting Case.

11.     In the summer of 2015, the DPS Defendants undertook responsibility for investigating a series of shootings that occurred along or near the I-10 freeway in Phoenix, Arizona, which became known as the "I-10 Freeway Shooting Case."

12.     During its investigation, DPS retrieved bullets and/or bullet fragments from four separate shooting incidents:  Incidents A, B, C, and D.

13.     Incident A occurred August 29, 2015, at approximately 1103 hours involving a Cadillac Escalade traveling eastbound on the I-10 near 19th Avenue.

14.     Incident B occurred at approximately 1109 hours involving a passenger bus traveling westbound on the I-10 near 43rd Avenue.

15.     Incident C occurred at approximately 2215 hours involving a Kia traveling eastbound on the I-10 near the exit for northbound SR51 and eastbound SR 202.

16.     Incident D occurred August 30, 2015, between 2145 and 2215 hours involving a BMW traveling westbound on the I-10 near SR 51.

17.     Defendants have failed to produce any evidence that Incident D occurred at any other time other than between 2145 hours and 2215 hours on August 30, 2015.

18.     Defendants have produced no evidence that Leslie Merritt, Jr. was at or near the scene of any of the shooting incidents.

19.     On August 31, 2015, DPS Detective Ron Baroldy requested that the DPS crime lab (hereinafter "CRCL") analyze and compare the bullets and bullet fragments recovered from the four shooting incidents.

20.     Defendant Christopher Kalkowski at the DPS crime lab told DPS detectives that the evidentiary bullets and fragments from all four incidents all came from a single firearm with certain class characteristics.

21.     Kalkowski identified the evidentiary bullets and fragments as having been fired from a 9mm handgun that caused cartridges to spiral three times with a leftward twist as they emerged from the barrel.  Based on these characteristics, Kalkowski determined that the make and model of the firearm as a Model C9 manufactured by Hi-Point.

22.     DPS crime lab personnel contacted Hi-Point and learned that the company had produced about 286,800 Model C9 firearms that are capable of creating the characteristics that CRCL personnel purportedly found on the bullets and bullet fragments recovered in the various shooting incidents.

### B. The Pawn Shop Connection

23.     Meanwhile, the DPS Defendants were under intense public pressure and media scrutiny to solve the I-10 Freeway Shooting Case.

24.     By September 2015, DPS personnel were working overtime on the investigation.  Detectives normally assigned to other details within DPS were temporarily assigned to work on the I-10 Freeway Shooting Case as well.  All the detectives in the General Investigations Unit were assigned to the I-10 Freeway

Shooting Case.

25.    On September 5, 2015, DPS officer Travis Graff started as a new detective on the General Investigations Squad.  He was immediately assigned to the I-10 Freeway Shooting Case.

26.    Detective Graff had not at that time received any training in investigating weapons-related offenses, gun identification, or ballistics.

27.    While still being trained, Detective Graff was aware or became aware that DPS had access to a computerized PAWN database.

28.    The PAWN database, which is designed to assist in the recovery of stolen property, identifies the items in possession of various pawn shops.

29.    Detective Graff asked his supervisor, Sgt. Tony Mapp, whether he could use the system to see if any Hi-Point 9 mm firearms were in pawn shops.

30.    Sgt. Mapp responded that "if you want to buy a lottery ticket to go ahead," or words to that effect.

31.    Accordingly, on September 17, 2015, Detective Graff traveled to various pawn shops to collect Hi-Point 9mm Model C9 firearms that were in pawn.  DPS collected eight such firearms, including more than one from Mo Money Pawn Shop, located at 1152 East Indian School Road, Phoenix, Arizona.

32.    The PAWN database contained information about the various eight firearms, including the dates and times at which they were respectively pawned and retrieved by their owners.

33.    At the time that Detective Graff collected one of the Hi-Point C9 firearms from

Mo Money Pawn, he knew from the PAWN database that it had been pawned by its owner on August 30, 2016, at approximately 5:31 p.m., **more than four hours before the occurrence of Incident D**.

34.   Records from Mo Money Pawn Shop confirmed that the firearm which Detective Graff seized had been pawned there by Leslie Merritt, Jr. on August 30, 2016, at about 5:31 p.m.

35.   On September 17, 2015, Detective Graff took the pawn shop firearms, including Leslie Merritt's, to the DPS crime lab. Defendant Kalkowski was waiting for him.

36.   At the time, Kalkowski was suffering from a severe back injury and had been taking narcotic pain medication prescribed by at least one physician.

37.   At or around the same time, DPS personnel were searching Leslie Merritt's Facebook profile and saw that he had shared newspaper articles about the I-10 Freeway Shooting Case.

38.   DPS personnel told the crime lab to test Leslie Merritt's gun first.

39.   Defendant Kalkowski intentionally, knowingly and recklessly falsified his methodology to analyze the evidentiary bullets and fragments.

40.   The evidentiary bullets and fragments submitted to the DPS crime lab contained insufficient data for a firearm examiner to make a positive individualized match to any particular firearm.

41.   Defendant Kalkowski intentionally, knowingly and recklessly failed, among other things, to line up the driving edges of the lands when comparing test fire and

evidentiary bullets. As a result, Kalkowski's conclusions were false.

42.     Despite his knowing and reckless use of flawed methodology, on September 18, 2015, at 8:08 a.m., Defendant Kalkowski called Detective Graff and told him that the evidence bullets from all four shooting were a "100% match" to Leslie Merritt's gun.

43.     Defendant Kalkowski told Detective Graff that the "100% match" was true of all four incidents with respect to Merritt's gun.

44.     The statement of Defendant Kalkowski that Merritt's gun was the firearm that fired the bullets in all four shootings to a "100% certainty" was the only evidence that linked Merritt to any of the shooting incidents.

45.     Without the statement of Defendant Kalkowski, Leslie Merritt would not have been subject to an arrest, incarceration, attempted prosecution, deprivation of his civil rights, and damages.

46.     Leslie Merritt, Jr. is factually innocent of any of the crimes with which he was charged or arrested.

### C. Defendant Kalkowski Misled the Police About the Probability of an Identification

47.     Defendant Kalkowski intentionally and/or recklessly misled detectives that they could identify Leslie Merritt's firearm as the source of the evidentiary bullets and fragments for all four incidents with "100% certainty."

48.     Firearms examiners, like other applied scientists, are subject to cognitive biases and distortions, such as confirmation bias, hindsight bias, contextual bias,

and outcome bias, which compromise the accuracy of their conclusions. Firearms examiners are particularly prone to such biases and distortions when working under the pressure of a high profile case.

49.    The Arizona Department of Public Safety Crime Lab failed to implement safeguards to detect and eradicate bias among its firearms examiners.

50.    In this case, Defendant Kalkowski had only identified general class characteristics of the evidentiary bullets. He failed to identify the individual characteristics of the evidence bullets as having been fired from any particular firearm.

51.    Defendant Kalkowski's actions and omissions lacked a scientific basis and violated the standards of the firearms community.

### D. DPS Defendants Knew that the Crime Lab Had Botched the Identification

52.    On September 18, 2015, DPS detectives executed a search warrant at the MO Money Pawn Shop and picked up several pawn slips.

53.    Before arresting Leslie Merritt, Defendants recognized that Leslie Merritt's gun was at the pawn shop on August 30, 2015, at 5:31 p.m., before the time of the fourth shooting, Incident D.

54.    Defendants recognized that it was physically impossible for Leslie Merritt's firearm to have been used in Incident D when it was in the pawn shop.

55.    Defendants lacked any evidence that Leslie Merritt did not pawn his gun at 5:31 p.m. on August 30, 2015.

56.     Since the Kalkowski identified each of the evidentiary bullets and fragments to Leslie Merritt's gun with 100% certainty for each of the four incidents, DPS Defendants recognized that if Incident D could not be linked Leslie Merritt's firearm, then none of the incidents could be linked to the firearm.

57.     In other words, Defendants recognized before the arrest of Leslie Merritt, Jr. that only one of two scenarios could be true:  either (a)  Kalkowski misidentified the evidentiary bullets as having been fired from Leslie Merritt's gun, or (b) Incident D did not occur when Merritt's gun was in the custody of Mo Money Pawn Shop.

### E. All Defendants Fabricated a Timeline to Fit a Theory

58.     In response to their dilemma, Defendants should have obtained independent firearms analysis from outside DPS.   Instead, Defendants blithely chose to completely discount the first scenario and, rather, invented a theory that the tire involved in Incident D must have been shot days earlier, with the bullet lodging in the sidewall of the tire, only to later dislodge and deflate the tire on the night of August 30, 2015, after Leslie Merritt's gun was in the pawn shop.

59.     To bolster their fabricated theory, DPS detectives conducted a second interview with the driver of the BMW involved in Incident D and suggested that he was incorrect in his timing of the fourth shooting. The BMW driver disregarded their suggestion, reiterating that he could tell that the tire deflated promptly upon being shot.

60.     During the pendency of the criminal case against Plaintiff, DPS consulted with forensic scientist Lucien C. Haag to examine the BMW tire. Haag informed DPS

that the bullet striking the tire caused it to deflate almost immediately and no bullet ever lodged for a period of days before causing the tire to deflate.

61.     In fact, Defendants knew that the gouge marks on the BMW tire from Incident D establish that the bullet passed immediately through the tire causing it to deflate almost instantaneously.

62.     In two separate interviews with DPS detectives, the driver of the vehicle of Incident D was adamant that the shooting occurred between approximately 9:45 and 10:15 p.m. on Sunday, August 30, 2015, and that that the bullet did not lodge in the sidewall based on all of his observation and knowledge.

63.     DPS knew or had reason to know that no objective evidence had ever supported the claim that the bullet was lodged in the tire for days before it finally caused the tire to deflate.

64.     Defendants knew that without evidence to support a change in the time of Incident D, Defendant Kalkowski's statements were unreliable and failed to support that Leslie Merritt had committed any crime. Rather than obtain an independent firearms analysis to resolve their dilemma, Defendants rushed ahead to blame Leslie Merritt, Jr.

**F. All Defendants were Integral Participants in the Arrest.**

65.     All Defendants caused or were an integral participant in the arrest of Leslie Merritt, Jr. without probable cause that he committed a crime.

66.     On September 18, 2015, Defendants Silbert, Milstead, Hunter, Heape, and Pinnow ordered that Leslie Merritt should be arrested.

67.   According to Defendant Milstead, the MCAO Defendants also participated in the decision to arrest Leslie A. Merritt, Jr..

68.   Without the participation of each Defendant, Leslie Merritt would not have been arrested.

69.   The arrest of Leslie Merritt, Jr. occurred without an arrest warrant.

70.   Defendants failed to produce any evidence that Mr. Merritt was present at the scene of any of these shootings or that he unlawfully fired a gun. As Mr. Merritt was and is factually innocent of the charges, there was no such evidence that could be produced.

### G. Leslie Merritt, Jr. was Working and Taking Care of His Family

71.   On September 18, 2015, Leslie Merritt was 21 years old. He was working as a landscaper and parenting two young children.

72.   At about 6:15 p.m., Leslie Merritt was driving to Walmart to buy some diapers and wipes for his five-month-old daughter.

73.   After completing his purchase, he proceeded to the parking lot to return to his car.  Suddenly, he saw Department of Public Safety SWAT officers rushing toward him, pointing their automatic rifles, and yelling at him to get on the ground.

74.   Defendants forced him to face lay down on the parking lot.

75.   Next, DPS drove him to an interrogation room and interrogated him for over an hour, accusing him of a crime he did not commit.

76.   Leslie repeatedly declared his innocence.

77.   During the interrogation, DPS detectives lied to Leslie Merritt and told him

that they had a video of him.

78.    Leslie Merritt asked to see the alleged video.  No such video exists.

79.    Leslie never asked for a lawyer.  He thought that since he was answering all of their questions and has never fired a weapon at anyone, he would be going home.

80.    Instead, DPS officers booked Leslie Merritt into 4th Avenue Jail. Defendant Falcone intentionally used false information in booking paperwork because he recognized that no probable cause existed to arrest Leslie Merritt.

81.    Merritt would not be released until he had spent over two hundred days in solitary confinement.

## H. Defendants Suppressed Material Exculpatory Evidence Before the Grand Jury and Delayed Disclosure to Merritt's Counsel.

82.    After the warrantless arrest of Leslie Merritt, MCAO Defendants chose to bring the case before the Grand Jury.

83.    The Maricopa County prosecutor, Defendant Edward Leiter, misled the Grand Jury that Incident D occurred between the dates of August 22, 2015, and August 27, 2015.

84.    All Defendants knew that Leslie Merritt did not have access to his gun at the time of the fourth shooting incident.

85.    Defendants knew that zero evidence supported their fabricating a timeline to account for Incident D and hence grant credence to Kalkowski's misidentification.

86.    Defendants deliberately misled the Grand Jury that they had any evidence to support their theory that the bullet lodged in the inner sidewall of the BMW tire.

87.   Defendants deliberately failed to disclose to the Grand Jury the physical evidence of gouge marks on the BMW tire showing conclusively that the bullet passed right through the tire, and that the Defendants' theory of the bullet lodging in the tire was baseless.

88.   Defendants misled the Grand Jury that the crime lab had "definitively" and had "100 percent ballistically identified" Leslie Merritt's firearm to have fired the bullets from the four shooting incidents.

89.   Defendants deliberately misled the Grand Jury that the driver of the vehicle in Incident D was "assuming or guessing" or "unsure" about when his BMW tire sustained damage.

90.   Defendants deliberately suppressed material, exculpatory evidence during the prosecution, including specifically the second interview of the BMW driver in Incident D and license plate reader (LPR) data.

### I. Montgomery Knew that Merritt was not the Freeway Shooter

91.   Montgomery, MCAO Defendants, and Maricopa County recognized that the DPS Crime Lab had botched the identification.

92.   As a result, Montgomery, MCAO Defendants, and Maricopa County retained criminalist Lucien C. Haag to examine the ballistic evidence in the case.

93.   On or about February 3, 2016, Haag collected Merritt's gun and the evidentiary bullets and bullet fragments from the DPS crime lab.

94.   Mr. Haag reviewed the DPS criminalists' work and conducted his own investigation. He failed to match Leslie Merritt's gun as the source of any of the

evidentiary bullets or bullet fragments in any of the shootings.

95.   In February 2016, Haag informed Montgomery, MCAO Defendants, and Maricopa County that he could not match Leslie Merritt's gun as the source of any evidence in the case.

96.   In April 2016, Montgomery, MCAO Defendants, and Maricopa County also retained John E. Murdock, Forensic Consultant, who also examined the ballistic evidence.  Mr. Murdock informed Montgomery, MCAO Defendants, and Maricopa County that he could not match Leslie Merritt's gun as the source of any evidence in the case.

97.   On or about April 19, 2016, Leslie Merritt, Jr. was released from jail.

98.   On April 22, 2016, Montgomery and MCAO Defendants filed a motion to dismiss the criminal case against Leslie Merritt, Jr.

99.   On April 25, 2016, the court dismissed the criminal case.

100.   On or about April 29, 2016, at the request of Defendant Silbert, forensic scientist Gregory Klees of the Bureau of Alcohol, Tobacco, and Firearms conducted an independent examination of Merritt's firearm and the evidentiary bullets. Mr. Klees, along with Mr. Haag and Mr. Murdock, failed to match Leslie Merritt's firearm as the source of any evidence in the I-10 Freeway Shooting Case.

101.   All the while, Leslie Merritt has suffered intensely and immensely from the false accusations which all Defendants have levied against him.

102.   As a result of Defendants' actions, Leslie Merritt, Jr. is afraid that DPS is continuing to conduct covert surveillance of him. He feels threatened and

vulnerable.  He has had difficulty sleeping and experienced loss of appetite.  He tends to avoid social situations and is sometimes recognized in public and confronted by strangers.

103.   Even after the dismissal of all charges against Merritt, Defendant Milstead and Defendant Silbert have testified that DPS still believes that Merritt is the I-10 Freeway Shooter.

104.   Some or all of the DPS Defendants have caused ongoing surveillance of Leslie Merritt, Jr. causing him emotional distress.

105.   Defendant Montgomery still makes public comments that Leslie Merritt, Jr. is a suspect, although the evidence supporting his innocence is only getting stronger.

**FIRST CAUSE OF ACTION – False Arrest**
**(Against All DPS and MCAO Defendants)**

106.   Plaintiffs re-allege each and every allegation contained above as though more fully set forth herein.

107.   This Cause of Action is brought pursuant 42 U.S.C. § 1983 and the Fourth Amendment to the Constitution of the United States.

108.   All Defendants acted during all relevant times under color of law.

109.   On September 18, 2015, the defendants, individually and in concert with the others, did deprive Leslie A Merritt, Jr. of his rights secured by the Fourth Amendment to the United States Constitution, including his right to be secure in his person and free from unlawful arrest.

110.   Defendants' actions were a direct and proximate cause of DPS officers

arresting Leslie Merritt, Jr. without a warrant.

111.    Defendants are unable to establish that the arrest was founded upon probable cause.

112.    As a direct and proximate result of Defendants' misconduct, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION- False Imprisonment
### (Against All DPS and MCAO Defendants)

113.    Plaintiff re-alleges and incorporates by reference each and every allegation contained above as though more fully set forth herein.

114.    This Cause of Action is brought pursuant 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States.

115.    Defendants' actions as indicated above constitute false imprisonment.

116.    Defendants caused Leslie Merritt to be imprisoned against his will.

117.    As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION -Malicious Prosecution
### (Against All DPS and MCAO Defendants)

118.    Plaintiff re-alleges by reference every allegation contained above as though more fully set forth herein.

119.    This Cause of Action is brought pursuant to the Fourteenth Amendment and

42 U.S.C. § 1983.

120.   Defendants initiated or caused a criminal proceeding to be brought against Leslie Merritt, Jr.

121.   The Defendants' criminal prosecution of Leslie Merritt, Jr. terminated in his favor.

122.   The prosecution lacked probable cause.

123.   Defendants acted with malice, or with a primary purpose other than to bring Leslie Merritt, Jr. to justice.

124.   Defendants acted with the intent to deprive Leslie Merritt, Jr. of equal protection of the laws and intended to subject him to a denial of his constitutional rights.

125.   As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt, Jr. suffered severe physical pain, mental anguish, emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION - 42 U.S.C. § 1983 Brady claim
### (Against All DPS and MCAO Defendants)

126.   Plaintiff re-alleges by reference every allegation contained above as though more fully set forth herein.

127.   This Cause of Action is brought pursuant to the due process clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

128.   During the pendency of the criminal action against Leslie Merritt, Jr.,

Defendants acted with deliberate indifference or reckless disregard by withholding or concealing evidence that strongly indicated Merritt's innocence of the crimes for which he was held and which were reasonably likely to have resulted in a dismissal of the charges against him if revealed.

129.   In particular, Defendants failed to timely disclose, among other things, the second interview of Alfred Hackbarth which occurred on September 22, 2015, License Plate Reader data, undercover ("honeypot") website data, and crime lab notes.

130.   The failure of Defendants to disclose such highly exculpatory evidence occurred while Defendants understood the risks to the Plaintiff's rights by virtue of their withholding the information, or they were completely indifferent to those risks.

131.   As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt, Jr. was detained for an excessive and unusual period of time.

132.   As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

133.   As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an

1  amount to be proven at trial.

2  **FIFTH CAUSE OF ACTION − False Arrest**
3  **(Against State of Arizona)**

4  134.   Plaintiffs re-allege each and every allegation contained above as though more
5  fully set forth herein.

6  135.   This Cause of Action is brought pursuant to Arizona common law.

7  136.   On September 18, 2015, DPS officers arrested Leslie Merritt, Jr. without a
8  warrant.
9

10  137.   The State is unable to establish that the arrest was founded upon probable
11  cause.

12  138.   The State of Arizona is liable under the doctrine of respondeat superior for
13  the tortious acts of its law enforcement and crime lab personnel committed within
14  the scope of their employment.
15

16  139.   As a direct and proximate result of Defendants' misconduct, Leslie Merritt
17  suffered severe physical pain, mental anguish, and emotional distress, medical
18  expenses, and lost wages in an amount to be proven at trial.

19  **SIXTH CAUSE OF ACTION- False Imprisonment**
20  **(Against Defendants State of Arizona, Maricopa County, and Bill Montgomery)**

21  140.   Plaintiffs re-allege and re-incorporate by reference each and every allegation
22  contained above as though more fully set forth herein.
23

24  141.   This Cause of Action is brought pursuant to Arizona common law.

25  142.   Defendants' actions as indicated above constitute false imprisonment.

26

143.   Defendants caused Leslie Merritt to be imprisoned against his will.

144.   As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION -Malicious Prosecution
### (Against Defendants State of Arizona, Maricopa County, and Bill Montgomery)

145.   Plaintiffs re-allege by reference every allegation contained above as though more fully set forth herein.

146.   This Cause of Action is brought pursuant to Arizona law.

147.   Defendants initiated or caused a criminal proceeding to be brought against Leslie Merritt, Jr.

148.   The Defendants' criminal prosecution of Leslie Merritt, Jr. terminated in Leslie's favor.

149.   The prosecution lacked probable cause.

150.   In their investigatory process, Defendants acted with malice, or a primary purpose other than to bring Leslie Merritt to justice.

151.   As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION- Negligence and/or Gross Negligence**
**(Against Defendants State of Arizona, Maricopa County, and Bill**
**Montgomery)**

152.    Plaintiff re-alleges by reference every allegation contained above as though more fully set forth herein.

153.    This Cause of Action is brought pursuant to Arizona common law.

154.     Defendants had a legal duty of care to Leslie Merritt, Jr.

155.    Defendants and each of them fell below the standard of care in their treatment of Leslie Merritt by, among other things, failing to follow accepted scientific methodology in the crime lab, concealing material fundamental evidence from the grand jury, failing to disclose material fundamental evidence during the course of the prosecution, and violating AZ CONST Art. 2 § 4.

156.    As a direct and proximate result of Defendants' acts, omissions, and violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

**NINTH CAUSE OF ACTION- Intentional Infliction of Emotional**
**Distress**
**(Against Defendants State of Arizona, Maricopa County, and Bill**
**Montgomery)**

157.     Plaintiff re-alleges by reference every allegation contained above as though more fully set forth herein.

158.    This Cause of Action is brought pursuant to Arizona common law.

159.     As described above, the conduct of each Defendant was extreme and

outrageous.

160.   Each Defendant either intend to cause emotional distress or recklessly disregard the near certainty that such distress would result from their conduct.

161.   As a result of each Defendants conduct, Leslie Merritt, Jr. was caused to endure severe emotional distress.

162.   In addition, as a direct and proximate result of Defendants' acts, omissions, and violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

### TENTH CAUSE OF ACTION- Aiding and Abetting Tortious Conduct
### (Against Defendants State of Arizona, Maricopa County, and Bill Montgomery)

163.   Plaintiff re-alleges by reference every allegation contained above as though more fully set forth herein.

164.   Each Defendant has aided and abetted others in committing tortious acts against Leslie Merritt.

165.   This Cause of Action is brought pursuant to Arizona common law.

166.   As expressed above in causes of action One through Five, each Defendant has committed a tort or torts that has caused injury to Leslie Merritt, Jr.

167.   Defendants Montgomery and Maricopa County knew that the State of Arizona breached a duty of reasonable care to Leslie Merritt, Jr.

168.   Defendants Montgomery and Maricopa County provided substantial assistance or encouragement to the State of Arizona in the achievement of the

breach of reasonable care to Leslie Merritt, Jr.

169.   Defendant State of Arizona knew that Defendants Montgomery and Maricopa County breached a duty of reasonable care to Leslie Merritt, Jr.

170.   Defendant State of Arizona provided substantial assistance or encouragement to Defendants Montgomery and Maricopa County in the achievement of the breach of reasonable care to Leslie Merritt, Jr.

171.   As a direct and proximate result of Defendants' acts, omissions, and constitutional violations alleged above, Leslie Merritt suffered severe physical pain, mental anguish, and emotional distress, medical expenses, and lost wages in an amount to be proven at trial.

   **WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.      For general damages experienced by Leslie Merritt, Jr.;

B.      For such medical and medical expenses as may be reasonably incurred by Plaintiff in the future and as may be proven at the time of trial;

C.      For past and future loss of earnings/loss of earning capacity;

D.      For exemplary damages;

E.      For Plaintiff's attorney's fees under 42 U.S.C. § 1988;

F.      For Plaintiff's court costs incurred herein and legal interest; and,

G.      For such other and further relief as the Court may deem just and proper.

Dated this 8th day of December 2017.

LAW OFFICES OF DAVID J. DON, PLLC

By:   /s/ David J Don
      David J. Don
      *Attorney for Plaintiff Leslie Merritt, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of December 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Clerk of the Court
United States District Court, District of Arizona
Sandra Day O'Connor Courthouse
401 W. Washington St.
Phoenix, AZ 85003

Michele Iafrate, Esq.
Iafrate & Associates
649 North Second Avenue
Phoenix, Arizona  85003
miafrate@iafratelaw.com
Attorneys for Defendants Maricopa County and William Montgomery

Edward F. Novak, Esq.
Melissa Ho, Esq.
Jonathan G. Brinson, Esq.
Polsinelli PC
One East Washington Street, Suite 1200
Phoenix, AZ  85004
Email: enovak@polsinelli.com; mho@polsinelli.com, jbrinson@polsinelli.com
Attorneys for Defendant State of Arizona, Heston Silbert, Christopher Kalkowski, Frank Milstead, Ken Hunter, Kelly M. Heape, Jennifer Pinnow, Anthony Falcone

Daniel P. Struck, Esq.
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 W. Ray Road, Ste 300
Chandler AZ 85226
Email: dstruck@strucklove.com
Attorneys for Defendants Edward Leiter
Vanessa Losicco

By:    /s/David J. Don