## Case Memorandum

**To:** Mark Faull, Chief Deputy County Attorney

**From:** Ed Leiter and Vanessa Losicco

**Re:** Status of I-10 Shooter Case

**Date:** June 28, 2016

---

### I. Pre-Dismissal Status – *State v. Leslie Merritt, Jr.* CR2015-144211-001

In September 2015, Mr. Merritt was charged with several counts of Drive by Shooting and Aggravated Assault related to four separate freeway shootings that occurred on or between August 22, 2015 and August 30, 2015. When the case was charged, MCAO relied on the ballistics evidence as reported by DPS Criminalist Chris Kulkawski. It took several months after charging to receive full and completed reports from DPS. The case is a circumstantial case that relies entirely on circumstantial evidence. The circumstantial evidence, although not a perfect fit, was explained by the ballistics conclusions and the strength of that evidence.

As the case progressed, a number of significant factual issues arose, namely an alibi tied to cell phone analysis. The FBI conducted a cell phone tower analysis that attempted to place Merritt's telephone in the vicinity of the shootings at the times or around the times that they occurred. Unfortunately, the analysis tended to corroborate the defendant's alibi. The only mechanism for rebutting that analysis was by the strength of the ballistics "match" with the defendant's gun. This piece of evidence was the only method for connecting the defendant to the shootings. In order to strengthen the ballistics evidence, the determination was made by MCAO to hire an independent ballistics expert. MCAO, at the recommendation of Keith Manning, chose to hire Lucien Haag. Haag conducted an analysis of the evidence bullets as well as the test fired bullets from DPS and reviewed Chris Kulkawski's photos and findings. In February 2016, Haag met with members of MCAO, including Mr. Montgomery, to discuss his preliminary findings – essentially, that there were not enough striae to make a conclusion, therefore, disagreeing with Kulkawski's conclusions.

In March or April 2015, at the suggestion of Haag, he transported the evidence bullets and the test fired bullets to John Murdock, another renouned firearms/toolmark expert in California. Mr. Murdock authored a report which was received by MCAO on April 29, 2016. It concluded that Kulkawski "ascribed too much significance to a small amount of striated toolmark agreement."

The Haag report was received on April 15, 2016. Haag's report indicated that his findings were inconclusive – there was some agreement but not enough agreement in striae to make a conclusion.

AZ469024

Haag and Murdock's analysis was completely independent. Yet, both serve as a critique of DPS's overreach in their ballistic analysis. Due to the weakness in the ballistics evidence, the circumstantial evidence[1] becomes of utmost importance as follows:

<u>Defense Ballistics Expert</u>- On April 18, 2016, the State received a report from Erik Brown. Brown did his own examination of the BMW tire and concluded that based on the perforation and gouge present in the interior tire wall, the bullet did not became lodged at an earlier point and become dislodged in the August 30th drive from the airport. Brown definitively concluded that the tire evidence proves that the bullet had to have been shot in the August 30th drive from the airport. We never received a report from Brown regarding the comparison of the test fired and evidence bullets, despite the fact that he

<u>Defense Tire Expert</u> – John Daws, a mechanical engineer, tested the BMW tire and based on his testing of the actual tire which included re-inflating the tire and measuring the time frame that the air escaped from the perforations and gouges from the bullet, concluded that the tire would have had to been shot in the BMW's drive from the airport after 9pm on August 30th. By 9pm on that date, Merritt's gun had been in pawn for approximately 4 hours.

- o   Hackbarth told police:

On starting his vehicle, he noted that the pressure in all the tires was slightly lower than normal (about 32 psi) according to the Tire Pressure Monitoring System (TMPS) in the vehicle. Mr. Hackbarth left the Terminal 2 parking garage at about 9:18 PM. According to his statement to police investigators, the tire pressure in his left front tire began to drop as he was on the transition road between the I-10 and SR-51. He stated that he noticed that the TPMS indicator had changed from green to yellow after he merged onto SR-51.

<u>Conversation with Haag regarding tire evidence</u> – The State provided Luke Haag with the Erik Brown's report. Haag indicated that he did not disagree with any of Brown's analysis. Notably, Haag agrees with Brown's conclusion that the puncture and tire wall hole were made simultaneously. He agreed with Brown that the bullet did not become lodged in the tire wall and later become dislodged.

<u>Additional Cell Phone Analysis</u> - We met with Detective Kathy Enriquez with Phoenix PD who specializes in cell phone analysis. She had a couple of suggestions/ clarifications as to the cell phone analysis completed by SA Jeff Young with the FBI. Specifically, Det. Enriquez wanted clarification as to whether or not a physical extraction of the pertinent cell phones (602) 358-1888 and (480) 532-3973 had been completed. The information I received from DPS was that a cellebrite physical extraction was completed on both phones. Det. Enriquez also suggested an examination of all incoming/outgoing calls or text messages from all the cell phone tower dumps which could show the presence of an

---

[1] MCAO had requested at the onset of the prosecution that DPS conduct reconstruction of the shootings. To date, to our knowledge, those reconstructions have not been accomplished. To that end, the victims' vehicles were not preserved by DPS and are no longer available. Additionally, a subpoena was issued by MCAO for Merritt's grandfather's phone records. It is unknown if DPS has received those records.

AZ469025

unknown third phone. Enriquez specifically asked for examination of the dumps to see if any numbers connected to the defendant were called or received (friends, family). On April 15, 2016 DPS confirmed that the tower dump analysis revealed no record of incoming/outgoing calls or text messages could be connected to the defendant.

## II.     Post-Dismissal Investigation

State's Tire Expert – The State consulted with Steve Arndt, a mechanical engineer and tire expert, and provided him with the John Daws report as well as a powerpoint presentation of the BMW tire completed by Luke Haag. MCAO Det. Olson, Mr. Arndt and Luke Haag met with the victim, put his car on a lift at BMW Scottsdale, with BMW personnel present. At that time, it was determined that the black box information in Victim Hackbarth's car would not assist in determining when the tire was shot. Additionally, Arndt and Haag agreed with Daws that the tire would have gone completely flat in under 30 seconds of being shot.

Additional Ballistics Testing by DPS – In May 2016, DPS Criminalist Lisa Peloza was informed of a powerpoint presentation created by Lucien Haag regarding his opinion about shooting a .357 bullet through a 9mm HiPoint C9 for better toolmark comparison purposes. Ms. Peloza conducted such analysis. At that time, she opined that the .357 test fires affirmed Mr. Kulkawski's previous conclusions that the 9mm test fires matched the evidence bullets. DCA Losicco and DCA Leckrone met with Ms. Peloza on June 16, 2016 to discuss her tests, analyses and conclusions. At that time, Ms. Peloza discussed some official and unofficial analyses that she conducted. The unofficial analyses were not documented. She also attempted to go through the photographs that she used as part of her analysis. During our meeting she was unable to decipher one photograph from another. She stated that "in her mind" the 9mm test fires were the same as the .357 test fires. We have since asked for her photographs to be relabeled so that others understood what they were. As of the date of this memo, DCAs Losicco and Leiter have not received those relabeled photographs.

Ms. Peloza also indicated that she test fired the copper jacketed bullets found in Mr. Merritt's home to determine if they could be compared to the evidence bullets. Ms. Peloza stated that she did not write a report regarding this event because the bullets were "more or less" of no additional assistance to her. Since, we have asked Ms. Peloza to author a report regarding this event. As of the date of this memo, DCAs Losicco and Leiter have not received a report.

On June 22, 2016, MCAO received an Affidavit from John Muchiulla at the DPS Crime Lab. His affidavit further affirms Ms. Peloza's testing above.

AZ469026