# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie A. Merritt, Jr., a single man,<br><br>        Plaintiff,<br><br>  vs.<br><br>State of Arizona, a body politic; Bill Montgomery, the elected Maricopa County Attorney, in his official and individual capacities; Maricopa County, a body politic; Heston Silbert, in his individual capacity; Christopher Kalkowski, in his individual capacity; Frank Milstead, in his individual capacity; Ken Hunter, in his individual capacity; Kelly M. Heape, in his individual capacity; Jennifer Pinnow, in her individual capacity; Anthony Falcone, in his individual capacity; Edward Leiter, in his individual capacity; Vanessa Losicco, in her individual capacity,<br><br>        Defendants. | Case No.<br>CV17-4540-PHX-DGC<br><br><br><br><br><br><br><br><br>DEPOSITION OF<br>JOHN MACIULLA<br><br>Phoenix, Arizona<br>February 12, 2019<br>10:34 a.m. |

REPORTED BY:

Cyndi Hirsch, RPR
Certified Reporter
Certificate No. 50102

SEYMOUR REPORTING SERVICES
Registered Reporting Firm R1000
137 East Elliot Road, #2473
Gilbert, Arizona 85299
(P)602.258.5800
(F)888.881.5440

1     Q.    I know that's your opinion.
2         The question, however, is as follows:  If the
3 firearm was in the pawnshop at the time that the BMW
4 was shot, the crime lab would be incorrect in con- --
5 identifying that bullet as having come from that
6 firearm; correct?
7     A.    I -- I don't agree with the way you're --
8 that's -- I mean, I can make that argument every case
9 we -- we examine, that "Well, if the firearm wasn't at
10 the house, then you weren't right when you identified
11 the firearm."
12         Well, that's all based on speculation on
13 other outside -- I mean, for lack of a better term --
14 "bias" that -- that Mr. Weller talked about.
15         What I'm referring to is what, as scientists,
16 we do.  We -- we examine it, following our policies
17 and procedures.  We identify a firearm.  That process
18 has been verified, goes through a tech review, goes
19 through an admin review.
20         Therefore, that's what our result is based
21 upon.  Scientifically, asking me what speculation is,
22 is not what we do in the -- in the -- in the -- the
23 lab.
24     Q.    Respectfully, Mr. Maciulla, you're being
25 offered as an expert witness here.  I'm entitled to

1  ask you hypothetical questions, and I don't care if
2  you like the hypothetical or not.  So let me try the
3  question again.
4       MR. BRINSON:  We don't care if you don't like
5  the answers.  He's allowed to answer how he --
6     Q.   BY MR. DON:   If --
7       MR. BRINSON:   -- sees fit.
8     Q.   BY MR. DON:  -- the -- if the firearm is in
9  the pawnshop at the time the BMW was shot, then the
10 crime lab is incorrect in identifying the firearm to
11 the bullet retrieved from the BMW?
12    A.   I --
13      MR. BRINSON:  Form.  Asked and answered.
14      THE WITNESS:  And I don't prefer to answer
15 your question as a hypothetical because you're being
16 very specific about the crime lab and about this case.
17      If it's a hypothetical, let's make up a case
18 and talk about if a case is on American Airlines
19 Flight 20 at the time something is shot; therefore,
20 that gun couldn't have fired that bullet.
21      But it's not a hypothetical when you're being
22 very specific to try to get me to use outside
23 influences from this case to conclude my answer.
24      My answer and my report is based on what we
25 did scientifically.  If you want to deduct what I'm

1  saying and flip it, that's -- that's for you to
2  decide.  But I don't feel it's fair to me, on tape, to
3  give --
4           MR. LAMM:  Here's the deal, it does not --
5           MR. BRINSON:  No.  No.  No.  No.  No.
6           (Simultaneous talking.)
7           MR. LAMM:  -- because you don't think it's
8  fair --
9           MR. BRINSON:  No.  No.  You're not allowed to
10 talk at this deposition.
11          (Simultaneous talking.)
12          MR. LAMM:  -- we'll strike you as an expert.
13          MR. BRINSON:  There's one attorney that's --
14          (Simultaneous talking.)
15          MR. LAMM:  Talk to your client about
16 answering the hypotheticals as an expert, or we'll
17 strike his opinion.  Now we'll take a break.
18          MR. BRINSON:  You stop talking on the record.
19          (A recess was taken from 2:07 p.m. to
20 2:18 p.m.)
21          MR. BRINSON:  Are we on the record?
22          THE COURT REPORTER:  Okay.
23          MR. DON:  Okay.
24          MR. BRINSON:  Before we resume, for the
25 record, the outburst and the -- the yelling --

1         MR. LAMM: You know what --

2         MR. BRINSON: -- and the --

3         MR. LAMM: -- Jon?

4         (Simultaneous talking.)

5         MR. BRINSON: -- swearing at the -- I'm

6 putting this on the -- I'm putting this on the record.

7         MR. LAMM: Sure.

8         MR. BRINSON: Yelling and swearing and

9 screaming at the witness is inappropriate, especially

10 by an attorney that is not the one that's taking the

11 deposition.

12         Reminding Counsel that there is one attorney

13 that's allowed to speak and take the deposition, and

14 if that happens anymore, we're going to have to call

15 the judge or terminate the deposition.

16         MR. DON: So you're okay if I yell and

17 scream?

18         MR. BRINSON: You can yell and scream all you

19 want.

20         MR. DON: Fantastic. We're back on.

21   Q. BY MR. DON: If the firearm was in the

22 pawnshop at the time the BMW was shot, the crime lab

23 is wrong in identifying it as having fired the bullet

24 that struck the BMW; true?

25         MR. BRINSON: Objection to form. And I was

1 scientific validity of that analysis.
2 We still require that it goes through a
3 verification process, so if we did an identification,
4 and someone else doing the verification was
5 inconclusive, the identification would still require a
6 verification in order to report out that
7 identifica- -- identification result.
8 When I said that one is acceptable with the
9 other, it's when one examiner comes up to
10 identification as a conclusion that follows the
11 procedures and policies, and it is verified, and
12 another person examines that evidence and says,
13 "Inconclusive," well, an inconclusive does not mean
14 they're saying it's not from that firearm.
15 They're saying they didn't feel there's
16 enough evidence there for them to draw the same
17 conclusion.
18 The -- the big difference would be if someone
19 identifies the firearm and another person says, "It's
20 excluded; it's not the firearm."
21 Now we have a difference, in that is it the
22 gun or not? And an inconclusive is not drawing that
23 conclusion that it is or it isn't. It's saying the
24 result is inconclusive.
25 Q. When you have a difficult comparison, as --