Jason D. Lamm (018454)
Law Office of Jason Lamm
2501 North Seventh Street
Phoenix, Arizona 85006-1062
Tel: (602) 222-9237
Fax: (602) 222-2299
Email: jlamm@cyberlawaz.com
*Attorney for Plaintiff Leslie A. Merritt, Jr.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie A Merritt, Jr., a single man, | ) Case No.: CV17-4540-PHX-DGC |
| Plaintiff, | ) **PLAINTIFF'S RESPONSE TO DEFENDANT'S SEVENTH MOTION IN LIMINE RE: AARON SAUCEDO (DOC 330)** |
| vs. | ) |
| State of Arizona, et al. | ) |
| Defendants. | ) |

The plaintiff, through undersigned counsel, opposes the defendant's Seventh Motion *In Limine* Re: Aaron Saucedo (Doc 330) because the evidence showing Saucedo's responsibility dissipates any claims against Merritt and impeaches the defendant's claim of probable cause under Rules 401 and 403.

## Introduction

The defendant knew Saucedo was responsible for the Freeway Shootings before they arrested Mr. Merritt. Before arresting the plaintiff, the defendant had license plate reader (LPR) data, showing a high likelihood that Saucedo's vehicle was identified at two–if not more–of the Freeway Shootings. They knew that Saucedo's gun was not in pawn at the time of the four shootings, and they had information linking Saucedo to a homicide that occurred in August of 2015,

involving the same caliber of weapon that Christopher Kalkowski identified as having fired the evidentiary bullets.

Because of the defendant's rush to judgment of Mr. Merritt based on his Facebook posting, the State disregarded the evidence.  The DPS crime lab never scientifically compared test-fired bullets from Saucedo's gun to the evidentiary bullets. Instead, the DPS investigative supervisor lied to a prosecutor and told her that LPR's were not used with the defendant's investigation of the Freeway Shootings.

The defendant has maintained that it had probable cause to arrest the plaintiff (Doc 34 at ¶ 80).  The jury should hear not only facts the defendant chose to consider but also the facts they knew and chose to ignore and obfuscate.

### **Statement of Material Facts**

1.    Aaron Saucedo has been indicted for the murder of Raul Romero, his mother's boyfriend, which occurred on August 16, 2015 (Exhibit 1).

2.    According to police reports, multiple 9mm casings were recovered at the scene of the murder.  (Exhibit 2). The Phoenix Police Crime Lab determined that the casings came from a Hi-Point Model C9 9mm handgun.  (Exhibit 3).

4.    The defendant arrested plaintiff without a warrant for, among others: 1) shooting a Cadillac Escalade at 11:03 a.m. on August 29, 2015, on the I-10 Freeway near 19th Avenue, and 2) shooting a Vanar Bus at 11:03 a.m. on August 29, 2015, on the I-10 Freeway near 43rd Avenue. The defendant's trajectory analysis of the two shootings suggests that the shooter was driving westbound at the time of both shootings.

5.     On Saturday, August 29, 2015, at 10:47 a.m., Saucedo purchased 50 rounds of 9mm ammunition from Mo Money Pawn Shop, at 11:52 E. Indian School Road in Phoenix. (Exhibit 4).

6.     It is reasonable to believe that, after purchasing ammunition on August 29, 2015, it would take about a minute for Saucedo to leave the store and get into his car, and an additional minute or two for him to load the magazine of his Hi-Point C9 handgun. (Exhibit 5, Declaration of Clark at p.3, ¶ 17).

7.     Saucedo would have needed approximately 12 minutes to drive from Mo Money to I-10 and 19th Avenue. It would take an additional two minutes after the Escalade shooting to drive westbound on the I-10 to the location of the 43rd Avenue shooting. (*Id*. at ¶ 19). This information places Saucedo near the two shootings immediately after he bought the bullets. *Id*.

8.     On September 8, 2015, Sgt. Tony Mapp received a memorandum from the DPS Arizona Vehicle Theft Task Force discussing the use of LPR's in the investigation of the Freeway shootings. That memorandum discussed DPS's analysis of 3493 license plates, detecting over 800 at two or more shooting locations. (Exhibit 6).

9.     Details of the recurrent license plates were in a further report dated September 10, 2015. Per this LPR data in the defendant's possession before the plaintiff's arrest, a vehicle bearing the license plate BLA 7520 was captured at the scene of both shootings. (Exhibit 7).

10.    According to a Phoenix Police report generated concerning additional first-degree murder charges against Saucedo, at the time of the Escalade and Bus

shootings (on August 29, 2015), Saucedo owned a 2001 BMW bearing Arizona license plate BLA 7920. (Exhibit 8).

11.    LPR's use Optical Character Recognition (OCR) that can translate plate information into digital text. OCR is not exact; thus, the police expect some errors in character recognition, though the more characters of a license plate identified–particularly alphabetical characters as they are more statistically weighty than numerical characters–the greater the investigative significance of the scan or read by the LPR. (Exhibit 5, ¶ 12).

12.    On or about September 4, 2015, Kalkowski opined that the evidentiary bullets were fired from a single Hi-Point Model C9 handgun. (Doc 334 at (c)(1)(4)).

13.    On September 14, 2015, Detective Graff checked a pawnshop database to locate any Hi-Point Model C9 handguns in local pawn shops. Among them was Aaron Saucedo's. (Exhibit 9). The records Graff recovered list Saucedo's home address as 4620 N. 10th Street in Phoenix.

14.    Those same records showed that Saucedo pawned his gun on Tuesday, September 1, 2015, and that it was available (and not in pawn) for all of the shootings with which plaintiff was criminally charged, including shooting Alfred Hackbarth's BMW on Sunday, August 30, 2015, at 9:45–some 4 hours after Merritt's gun was pawned. *Id.*

15.    On September 17, 2015, Detective Graff collected seven (7) Hi-Point Model C9 handguns from local pawn shops, including Saucedo's. (Exhibit 10).

16.    According to a DPS-generated internal PowerPoint presentation, background checks were done on all the seized guns and their owners, including cross-checks

through COPLINK and the Phoenix Police Departments Report Management System. (Exhibit 11).

17.     "COPLINK is a data sharing and crime analytics platform that is designed to help law enforcement organizations solve crimes faster by providing tactical, strategic, and command-level access to vast quantities of seemingly unrelated data. With task-oriented features, the COPLINK program helps law enforcement professionals search the expansive inter-agency database for leads and suspects."[1]

18.     Saucedo's home address is identical with his mother's, who was listed in a recent Phoenix Police report concerning her boyfriend's murder, which would have caused an alert in both COPLINK and in the check of Phoenix Police records. This alert would have caused reasonable investigators to investigate Saucedo further and not to arrest the plaintiff until this investigation excluded Saucedo as a suspect. (Exhibit 5 at ¶ 12).

19.     Reasonable police officers would have conducted a background investigation on all of the individuals who pawned the gun in Exhibit 10, including a check into all vehicles registered to them, and compared that information to the LPR data acquired on September 10, 2015, for any commonalities. *Id.*

20.     A reasonable police officer would have not only noticed that 6 or 7 characters in Saucedo's license plate matched the vehicles observed at both shootings, but also would have immediately conducted further investigation into his involvement in the

---

[1] https://forensiclogic.com/coplink (last visited March 1, 2020).

Freeway Shootings. The LPRs matching six of the seven characters suggest high reliability and accuracy. It would be unreasonable not to investigate Saucedo further and to focus purely upon the plaintiff, particularly because the plaintiff's gun was not available for the BMW shooting. *Id.*

21.    Sgt. Mapp diverted the crime lab away from Saucedo's gun by directing the crime lab to test Merritt's gun first. (Exhibit 12).

22.    Kalkowski never compared test fires from Saucedo's gun to the evidentiary bullets. (Exhibit 13, Deposition of Kalkowski at 123:9-20; 133:24-134:3).

23. According to the prosecutor who handled Merritt's case, DPS Sgt. Tony Mapp (the supervisor over the investigation) lied to her and told her LPR's were not used in the Freeway Shooter Investigation, although he received two reports (Exhibits 6 and 7) demonstrating that they were. (Exhibit 14, Deposition of Cuevas at 123:6-14).

## **Applicable Law and Argument**

Probable cause depends on the objective facts and circumstances of an arrest. *United States v. Cannon*, 29 F.3d 472, 476 (9th Cir. 1994). The "standard of probable cause is not a subjective standard but an objective one." *State v. Vaughn*, 471 P.2d 744, 746 (Ariz.Ct.App.1970); see *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). The officer's subjective opinion is, therefore, not material. *Id.* A police officer, however, "may not disregard facts tending to dissipate probable cause," *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005), and he or she "may not close her or his eyes to facts that would help clarify the circumstances of an arrest." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986). "Reasonable

avenues of investigation must be pursued. ...” *Id.* An officer cannot "ignore substantial exculpatory evidence" in determining probable cause. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305-06 (6th Cir.2005).

Plaintiff has squarely put at issue whether, before his arrest, the defendant had knowledge or information that someone other than the plaintiff committed the crimes for which he was arrested. See Doc. 334 at 8:19. The defendant possessed the evidence about Aaron Saucedo before Merritt's arrest, and it is part of the totality of the circumstances that would lead a prudent person to investigate further. But in a rush to judgment, the defendant arrested the plaintiff without investigating Saucedo, despite obvious indicia of his commission of numerous violent crimes. The information is relevant under both Rules 401 and 403 to impeach the defendant's claim of having conducted an adequate investigation before arresting the plaintiff and, also, to impeach the defendant's claim of probable cause to arrest.

### Conclusion

Because the jury must decide whether, objectively, the defendant had probable cause, the evidence known to the defendant about Aaron Saucedo, before the plaintiff's arrest, is highly relevant and admissible under Rule 401 and 403. And while such evidence may be potentially harmful to the defendant's claims, it has previously conceded that "Not all harmful evidence, however, is unfairly prejudicial." *State v. Mott*, 931 P.2d 1046, 1055-56 (Ariz.1997). (Doc 302 at 3-7:9). The Court should deny the defendant's Seventh Motion *In Limine*.

DATED THIS 2nd day of March 2020.

/s/ Jason D. Lamm
Jason D. Lamm
Attorney for Plaintiff Leslie Merritt, Jr.

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of March 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Clerk of the Court
United States District Court, District of Arizona
Sandra Day O'Connor Courthouse
401 W. Washington St.
Phoenix, AZ 85003

Edward F. Novak, Esq.
Melissa Ho, Esq.
Jonathan G. Brinson, Esq.
Andrew Fox, Esq.
Polsinelli PC
One East Washington Street, Suite 1200
Phoenix, AZ 85004

enovak@polsinelli.com; mho@polsinelli.com, jbrinson@polsinelli.com
Attorneys for Defendant State of Arizona, Heston Silbert, Christopher Kalkowski, Frank Milstead, Ken Hunter, Kelly M. Heape, Jennifer Pinnow, Anthony Falcone

By:    /s/ Kathryn A. Miller
Kathryn A. Miller