Jason D. Lamm (018454)
Law Office of Jason Lamm
2501 N. Seventh Street
Phoenix, AZ 85006
Tel: (602) 222-9237
Fax: (602) 222-2299
Email: jlamm@cyberlawaz.com

David J. Don (016462)
Law Office of David J. Don, PLLC
301 E. Bethany Home Rd., Ste. B-100
Phoenix, Arizona 85012
Tel: 480-948-1212
Fax: 480-696-775
Email: david@azcivilrights.com

*Attorneys for Plaintiff Leslie A. Merritt, Jr.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Leslie A Merritt, Jr., a single man, | Case No.: CV17-4540-PHX-DGC |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL PLEADING RE MOTIONS IN LIMINE DOCS 290, 335, 336** |
| vs. | |
| State of Arizona, et al. | |
| Defendants. | |

The Plaintiff submits his supplemental briefing under the Court's Order at Doc 382.

**I.  Facts**

**A.  Lucien "Luke" Haag**

The Plaintiff disclosed Luke Haag in his Initial Disclosure Statement of December 16, 2016. The disclosure statement included the reports of Haag's ballistic examination, his shooting reconstruction, and the tire deflation testing

-1-

which he jointly-conducted with DPS crime lab employee, Aaron Brudenell, demonstrating the *de minimis* time the BMW tire took to deflate after being shot. The Plaintiff also concurrently disclosed the entirety of Haag's file, including his curriculum vitae, a list of his publications, and his billings containing his rate of compensation.

The parties deposed Haag on June 6, 2017, and August 30, 2017, and the Defendant questioned him at length about the basis for his views that he did not agree with Kalkowski's conclusion that that the Plaintiff's gun fired the evidentiary bullets and that Hackbarth's tire deflated immediately after being shot. (Exhibit 1, Deposition of Lucien Haag (Vol. 1) at 72:5-17, 105:13-106:16). Exhibit 2, Deposition of Lucien Haag (Vol. 2) at 4:13-24, 51:24-52:7.

Haag will testify about his examinations of the evidence bullets, statements that Kalkowski made directly to him, and the tire deflation study which he conducted with Brudenell. All of Haag's reports, which contained his opinions, were admitted as exhibits at his depositions over two days. (See Exhibit 1 at pp.2-3).

**B.     John Murdock**

In response to Plaintiff's written discovery requests, on March 15, 2017, Defendant produced the entirety of Murdock's file, including his report, CV, and billings. The parties deposed Murdock on June 13, 2017. All of Murdock's reports were admitted as exhibits at his deposition. (See Exhibit 3 at p. 2). The Defendant's counsel questioned him extensively about why he believed Kalkowski misidentified Plaintiff's gun, and about statements Kalkowski made to him when Kalkowski ignored Murdock's efforts to discuss the substantive differences in their opinions,

as required under the profession's (AFTE's) Code of Ethics, which DPS purports to follow.

### C. Gregory Klees

Under the DPS Crime Lab Quality Assurance policy, DPS was required to have an impartial party review the ballistic identification given conflicting findings of Haag. Exhibit 4, Deposition of John Maciulla (Vol. 1) at Ex. 7. The State engaged Gregory Klees, an ATF criminalist, to conduct an independent comparison of the evidence bullets and Plaintiff's gun. The DPS crime lab "request[ed] that the ATF rework the case as an impartial party." *Id* at . DPS Deputy Director Silbert took credit for having come up with having ATF retest on DPS's behalf. (Exhibit 5, Deposition of Heston Silbert at 133:16–134:11). Maciulla testified that he "accept[ed] the findings of Klees (and the ATF) as an impartial party" and that ATF was not wrong. (Exhibit 4 at 123:18-124:8). Maciulla testified that Klees was known to DPS as he taught Maciulla firearms identification and because Klees had a favorable reputation in their scientific community. (*Id.* at 9:24-10:5). Plaintiff obtained a copy of Klees' report (and all supporting documentation) from ATF and disclosed it on September 12, 2017. He was not deposed.

## II. Disclosure of Haag, Murdock & Klees (Docs 335 and 336)

### A. Rule 26(a)(2) Compliance

The Plaintiff timely disclosed the identities of Haag, Murdock, and Klees, the subject of their testimony, and all of their supporting documentation. Since the

Plaintiff did not retain these witnesses as experts for this case, written reports were not required. But each has produced a written report, all of which have been disclosed, thereby satisfying the Plaintiff's requirement of providing a summary of their opinions under Rule 26(a)(2)(C). Also, the opinions of Haag and Murdock were further testified to in depositions, which the Court ordered would be treated as part of expert disclosure. (*See* Doc 45, p 3 lines 17-19). The Plaintiff's disclosures of Haag, Murdock and Klees comply with Rule 26(2)(C) and substantially comply, if necessary, with Rule 26(2)(B).[1]

**B.    Harmlessness Under Rule 37(c)(1) and (2)**

Even if the Plaintiff improperly characterized the testimony of Haag, Murdock, and Klees as non-expert witnesses, any such deficiencies were harmless. Plaintiff has not withheld any substantive item of disclosure nor created any surprise or prejudice. Plaintiff readily acknowledges that he must prove harmlessness under Rule 37. *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). Indeed, there is no prejudice or surprise because the Defendant deposed Haag and Murdock, exploring all of their opinions. With this knowledge, it also has disclosed rebuttal experts on the subjects of ballistics, shooting reconstruction, and tire deflation. Because Haag and Murdock were already disclosed as witnesses, no disruption to trial would occur. Finally, Plaintiff

---

[1] Notably, this Court permitted Defendant's expert, Dr. Philip Lett, to testify over Plaintiff's objection, even though his report was not technically compliant with Rule 26(a)(2)(B)'s requirement regarding prior testimony, given that all supporting aspects of his qualifications and opinion were borne out elsewhere.  (See Doc. 367).

has acted in good faith and has never engaged in any abusive or dilatory litigation practices, and there is no evidence to the contrary. The Court should find that Rule 26(a)(2)(c) has been satisfied or that any non-compliant aspect of disclosure is harmless under Rule 37.

**III.     Reports–Hearsay Considerations–Rule 801(d)(2)**

**1.     The Haag and Murdock Reports.**

The Plaintiff intends to use the Haag and Murdock reports for impeachment to dispute the Defendant's claim to have made a scientific ballistic identification or to have followed reasonable crime lab procedures and quality assurance programs. The reports are also admissible under Rule 703 for the limited purpose of explaining the basis for Todd Weller's opinion about the inadequacies of the DPS quality assurance programs.

**2.     The Klees Report is Admissible**

The Klees report is admissible as non-hearsay for three reasons. First, Fed. R. Evid. 803(6) establishes a hearsay exception for regularly kept "business" records. The report was produced because DPS crime lab policy implements a quality assurance program, under which they hired Klees to review the evidence independently. The report dated April 29, 2016, was written within one day of Klees' receiving the evidence from DPS Sgt. Tony Mapp. The DPS policy evidences its regular business activity to conduct quality inquiries. *See e.g. Berry v. City and County of San Francisco*, 2018 WL 5629293 *4 (the CHP process of investigating

under particular circumstances confirms the report is a regularly-conducted activity). A ballistic examiner of evidence is required under the professional standards to create a written report. (See Exhibit 6, at p. 8, § 1.4). The production of the Klees report, which was based on his review of the ballistic evidence, was required under the DPS program. The Klees report was not produced in anticipation of litigation. The DPS trusted both Klees and his methodology, and knew him to be a trustworthy examiner.

Second, the report is admissible under the public record exception. Fed. R. Evid. 803(8). The report sets out factual findings of a legally-authorized investigation sought by DPS as part of its QA program. The State accepted the report, according to Maciulla, and cannot show the report lacks of trustworthiness. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S. Ct. 439, 102 L. Ed. 2d 445 (1988) (both facts and conclusions are admissible).

Third, the report is admissible as non-hearsay under FRE 801 (d)(2)(B) and (C), as a statement of an agent of a party opponent that the State "adopted or believed to be true" and "was made by a person whom the party authorized to make a statement on the subject." Klees was an agent of DPS, fulfilling their obligation under the QA program. DPS criminalist Maciulla "accept[ed] the findings of Klees (and the ATF) as an impartial party" and that ATF was not wrong. (Exhibit 4 (Maciulla Vol 1) at 123:18-124:8). The report of Klees is therefore admissible under 801(d)(2)(B) and (C).

## IV. Opinions of DPS Criminalists (Doc 290)

Defendants seek to elicit testimony that Maciulla, Peloza, and Brudenell all found an identification between the evidence bullets and Plaintiff's gun, yet Defendant has not designated these individuals as experts, nor has it *ever* disclosed a single piece of documentation authored by these individuals memorializing their opinions or any other materials required under Rule 26(a)(2)(b)(i-iv). (See Doc. 290 at 2:14-21). While Maciulla was designated as a rebuttal expert by the Defendant, he only opined that DPS followed all policies and procedures in this case in response to Todd Weller's opinion that it did not. (See Exhibit 7). He offered no opinions whatsoever about his examination of the evidence bullets. *Id.*

The failure to disclose documents that lies at the core of any expert's opinion could not more blatantly violate the rules concerning disclosure of experts, but it also, *ipso fact* deprives the Court from even attempting to make an admissibility determination given the absence of any foundation in the record. Moreover, the opinions at issue are also inadmissible because they violate the Court's standing order that the parties may call only one expert per issue (See Doc 45 at ¶5(g)), thereby making them cumulative.

*Arguendo*, even if the opinions are not cumulative, the testimony of other criminalists besides Kalkowski on the issue of identification is prejudicial under Rule 37 given Defendant's lack of disclosure. Allowing them to testify would necessitate the re-opening of discovery so that Plaintiff could depose the witnesses and then, possibly, have his experts rebut any testimony. It would undoubtedly

delay trial and result in the expenditure of significant additional time and costs for both parties.

**V.    CONCLUSION**

The Plaintiff requests an Order granting Plaintiff's Motion in Limine #1 (Doc 290) and denying the Defendant's Motions in Limine at Docs 335, 336.

DATED THIS 28th day of August 2020.

LAW OFFICE OF JASON LAMM

By:   /s/ Jason D. Lamm
Jason D. Lamm
*Attorney for Plaintiff Leslie Merritt, Jr.*

LAW OFFICES OF DAVID J. DON, P.L.L.C.

By:   /s/ David J. Don
David J. Don
*Attorney for Plaintiff Leslie Merritt, Jr.*

**CERTIFICATE OF SERVICE**

I certify that on this 28th day of August, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Edward F. Novak, Esq.
Melissa Ho, Esq.
Jonathan G. Brinson, Esq.
Polsinelli PC
One East Washington Street, Suite 1200
Phoenix, AZ 85004

enovak@polsinelli.com; mho@polsinelli.com, jbrinson@polsinelli.com
Attorneys for Defendant State of Arizona, Heston Silbert, Christopher Kalkowski, Frank Milstead, Ken Hunter, Kelly M. Heape, Jennifer Pinnow, Anthony Falcone

By: /s/ Kathryn Miller
     Kathryn Miller