1  Jason D. Lamm (018454)
   Law Office of Jason Lamm
2  6245 North 24th Pkwy, Ste. 208
   Phoenix, AZ 85016-2030
3  Tel: (602) 222-9237
4  Fax: (602) 222-2299
   Email: jlamm@cyberlawaz.com
5
6  David J. Don (016462)
   LAW OFFICE OF DAVID J. DON, PLLC
7  301 E. Bethany Home Rd., Suite B-100
   Phoenix, Arizona 85012
8  Tel: 480-948-1212
   Fax: 480-696-7756
9  Email: david@azcivilrights.com
10
   *Attorneys for Plaintiff Leslie A. Merritt, Jr.*
11
       **IN THE UNITED STATES DISTRICT COURT**
12          **FOR THE DISTRICT OF ARIZONA**
13
   Leslie A Merritt, Jr., a single man,   )  Case No.: CV17-4540-PHX-DGC
14                                         )
           Plaintiff,                      )  **RESPONSE TO DEFENDANT'S**
15       vs.                               )  **MOTION REGARDING**
                                           )  **EXTRAJUDICIAL STATEMENTS**
16 State of Arizona, et al.                )
                                           )
17                                         )
           Defendants.                     )
18
           Plaintiff, through counsel, responds in opposition to the Defendant's motion
19
   regarding Extrajudicial Comments. (Doc. 385). The Defendant takes umbrage about
20
   extrajudicial statements made by the Plaintiff's counsel in his role as a criminal
21
   defense attorney in a criminal case.  The comments were the product of professional
22
   discretion, limited in scope, authorized and required by the local rules and ethical
23
   rules, and protected by the First Amendment. Further, the Defendant fails to show
24
   the comments created a likelihood of prejudice or that they would interfere with a
25
   fair trial.
26

## I.    Facts

On August 13, 2020, the Maricopa County Superior Court in CR2015-144211-001 DT ruled that Leslie Merritt under A.R.S. § 13-4051 was "wrongfully arrested, indicted or otherwise charged for any crime" arising from the Freeway Shooting investigation. Whether the State court ruling has a preclusive effect on the federal civil case may be addressed in a subsequent filing; however, under Arizona law, the State of Arizona wrongfully arrested, indicted, or otherwise charged Mr. Merritt for the Freeway Shootings. Contrary to the Defendant's motion, the State of Arizona was a party to the Notation of Clearance[1]. (*Id.* at 2:20-21).  The Maricopa County Attorney's Office represented the State. All the extrajudicial statements involve media attention following granting the Notation of Clearance.

Since the Plaintiff's arrest on September 18, 2015, the Defendant has sought national media attention at Plaintiff's expense.  The state hired a special public relations officer to assist with media relations. (**Exhibit A.** Andy Hill Documents).  Within minutes of Plaintiff's arrest, the Governor celebrated the apprehension on social media.  (See Doc. 334 at p. 25, ¶(F)(2)(a)).  The next morning, Defendant held a press conference.  The former DPS Director made national television appearances and expressed his belief in Plaintiff's guilt.  When the criminal charges against Plaintiff were dismissed, the Director told the media that the Plaintiff is still "the right guy."

---

[1] DPS is a creation of the Arizona Legislature. *See* A.R.S. § 41-1711, *et seq*. As a statutorily-created State entity, DPS has only those attributes and powers the Legislature has prescribed for it. *Cox v. Pima County Law Enforcement Merit Sys. Counsel*, 27 Ariz. App. 494, 495, 556 P.2d 342, 343 (1976). The enabling legislation for DPS does not, however, create new rights or authorize it to enforce rights separate from the State as a distinct legal entity.

To this day, the Defendant has continued to malign Mr. Merritt in public records. Director Heston Silbert testified that Merritt belongs in prison and that he may still go to prison for the Freeway Shootings. Bennie Click, the state's police expert, has no room in his mind to believe that Merritt is not the Freeway Shooter. The Defendant has not corrected the public record, which remains replete with false statements about Merritt being the Freeway Shooter.

The I-10 Freeway Shootings case continues to polarize the Phoenix community. While some people are supportive of the Plaintiff, others are not. In comments posted after the Notation of Clearance, people posted they would like to get "an insider ASAP to wreck the [civil] case and make sure he doesn't win" and conjure up evidence "that he is planning on purchasing a large sum of drugs" to "save the taxpayers lots of money." (**Exhibit B**. Public Comments to ABC 15).

The court's granting of the Notation of Clearance was independently newsworthy. As Merritt's criminal defense attorney, Mr. Lamm responded to media inquiries solely in his capacity legitimately to counteract the undue prejudicial effect on Mr. Merritt of persistent negative statements. Mr. Lamm repeatedly made that clear in those media statements he was speaking solely about the Maricopa County Superior Court's granting a Notation of Clearance in the dismissed criminal matter prosecuted in that Court.

The Defendant, which opposed the Notation of Clearance, complains of statements made by counsel regarding the Notation of Clearance and cherry-picks statements to inflame the Court. Yet, it ignores that counsel clarified in his statement that any comments made were solely concerning the defunct criminal case, and not the pending civil matter before this Court. The Court need only

address its attention to the 3:33 time stamp in the video linked to in the Defendant's

motion to hear the following exchange:

> REPORTER SCOTT PASMORE:    So there's an ongoing civil suit, and
> there's a gag order on that so you really can't talk about it, but yesterday's
> ruling is really important in terms of that, isn't it.
>
> JASON LAMM:    Well, they are separate and distinct cases, and you're right,
> Scott, so I want to stay as far away from that as possible. I think that, again,
> Leslie was branded as a domestic terrorist.  That was one of the charges he
> was arrested for in September of 2015. So to Leslie, getting it out there, as he
> said at his initial appearance–and we just saw the video a moment ago, when
> he got out of jail and spoke to the media, he wants to clear his name. So,
> perhaps, that's the greater issue.  This was a guy who was 21 years old who
> was thrown into national media and accused of this high-profile crime, who
> always maintained his innocence.

(Doc 385 at p.4 fn 2).

There was no discussion of the merits of the civil case, no mention or use of

the term wrongful arrest, and no mention or use of the term false imprisonment.

Counsel explicitly delineated that the scope of his comments was confined to the

ruling in the criminal case only, the charges, and the Plaintiff's desire to clear his

name.

Defendant repeats the canard and cites its own statements in support that

Plaintiff's counsel or agent was the source of the "private settlement" amount

between Merritt and Maricopa County. (Doc 385 at 3:2-3).  And while the

Defendant surmises that the Plaintiff released the amount of settlement with

Maricopa County, which was reached by the parties and reported by numerous

outlets in the fall of 2018, that conjecture is wrong. The likelihood is that the media

saw a Notice of Settlement was publicly filed (Doc 203), and knew that the Maricopa

County Board of Supervisors had to approve the settlement and memorialize the

approval in its minutes.  It is common knowledge that all settlement amounts involving payment by a governmental agency are matters of public record.

Regarding any postings or statements made by Plaintiff's father, Leslie Merritt, Sr., he is not a party to this action, counsel does not represent him, and he is not counsel's agent. He undertook no activity at the counsel's direction.

## II.    Discussion

### A.    As Merritt's criminal defense counsel, Mr. Lamm had a duty to provide media statements.

Arizona's Rules of Professional Conduct anticipate public statements made to media outlets to be part of an attorney's duties representing a client.  *See Brandon v. Maricopa County*, 849 F.3d 837, 845 (9th Cir. 2017) (citing ARIZ. SUP. CT. 42, ER 3.6(a); *cf. Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14–15, 852 P.2d 1194 (1993) (noting that Arizona's Rules of Professional Conduct for attorneys permit certain, but not all, interactions with the media relating to pending cases).

Further, the ethical rules permit and the legal rules require a lawyer "to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." ER 3.6(c).  The purpose of the rule recognizes that "[w]hen prejudicial statements have been publicly made by others, responsive statements may have the salutary effect of lessening any resulting adverse impact on the adjudicative proceeding". ER 3.6, Comment at 6.

For over five years since his arrest, Merritt has lived under a cloud of false allegations brought on by the Defendant and others.  In the light of the media campaign orchestrated by the State against Merritt, his counsel reasonably recognized a duty to respond. The media statements were responsive to allegations made by the Defendant, the Governor of Arizona, and others in the criminal case,

which wrongfully accused Merritt of domestic terrorism on a national stage. The Defendant repeated the defamatory comments even after the dismissal of the criminal case at press conferences and in public statements. The Defendant has not corrected its false information. The publications of these statements remain on the internet and continue to require response in the public realm.

When approached by the media for comment following the ruling on the Petition for Notation of Clearance, counsel for Merritt had to respond to counteract the disparaging remarks of public officials and others. The attorney's duty was to take steps to avoid prejudice to his client. Contrary to any suggestions, the media contacted the Plaintiff's counsel for a statement on the procedural development in the criminal case. There is a gross disparity in access to the press between high ranking government officials with a devoted public relations department and a twenty-something year old landscaper. Plaintiff has limited opportunity to clear his name.  If Plaintiff did not attempt to do so, the Defendant would likely argue that Plaintiff has failed to mitigate his damages. From Plaintiff's perspective, the government officials used him in the media as a pawn in a high publicity case to further their political agendas and to create ill-will toward him from the public. Defendant's conjecture about the Plaintiff's "media campaign" and "effort to taint the jury pool" is a gross distortion of the sequence of events, the source of harm to Merritt, and ignores the consistent and ongoing failure of the Defendant to correct the public record. All statements made by counsel are justified and required responses to the public allegations of the Defendant and others.

**B.    All statements were limited to procedural developments in a separate case.**

The interview clarified in no uncertain terms that any statements made were unrelated to the pending civil case and were related solely to the Notation of Clearance entered by the State court. The Defendant complains about comments about a proceeding in state court and not before this Court.

Plaintiff's counsel has had no intent to unduly prejudice the pending civil case. He was mindful of no specific gag order in the civil case and dutifully consulted with ethics counsel before making any statements. The media statements were confined to and incorporated only items already in the public record, as required under LRCivP 83.8(a). That the attorney's obligations as a criminal defense lawyer may encroach upon overlapping factual aspects in the civil case requires the balancing of interests. The Court should not prevent a litigant's attorney from commenting on a separate criminal case, not before the court, which this court declined to do (See Doc 387).

The Defendant incorrectly argues that the repercussions endured by Plaintiff and his long term "harms are relevant *only* to this case, not to the State court Petition (Doc. 385 at 4:11-12 (Emphasis in original)). The Defendant is wrong. First, the Arizona legislature expressed specific concern during the passage of legislation (that was codified as A.R.S. § 13-4051), with the "economic and personal harm result[ing] to an individual" for a crime he did not commit. *Beasley v. Glenn*, 110 Ariz. 439, 440, 520 P.2d 310, 311 (1974). Thus, comments made about the personal effects on the Plaintiff from the false arrest and criminal charges pertain directly to the purpose of the Notation of Clearance. Second, the public records have previously disclosed Merritt's psychological problems, and the statements about Plaintiff's psychological trauma are necessary to prevent a misunderstanding about the scope of the court's ruling under A.R.S. § 13-4051. The Defendant does not point to any

media statement, including the settlement amount with Maricopa County, as being inaccurate or pertaining to anything that is not already in the public record.

### C. **Failure to establish a substantial likelihood of prejudice or interference with a fair trial.**

Defendant argues that Plaintiff's counsel's statements to the media present a "substantial likelihood of materially prejudicing an adjudicative proceeding." (Doc. 385 at 4:20-21) (citations omitted). The Defendant is presumptively wrong and provides no support for the contention.

The rules support the opposite position. ER 3.6, Arizona Rule of Professional Conduct, permits a lawyer to state "information contained in a public record" and the "result of any step in litigation". ER 3.6(b)(2) and (3). The State Bar Comment indicates that comments on these subjects should "not ordinarily be considered to present a substantial likelihood of material prejudice." Comment to ER 3.6 (4). The statements are unlikely to create material prejudice to a civil trial. *See* Comment to ER 3.6 (6) (A civil trial is less sensitive than a criminal jury trial to extrajudicial speech).

As a predicate matter, LRCivP 83.8(a) requires the Defendant to show that the dissemination of extrajudicial statements has created a reasonable likelihood to interfere with a fair trial. The analysis must involve reviewing the "totality of circumstances" in determining whether the Defendant was deprived of a fair trial by prejudicial publicity. *See Sheppard v. Maxwell*, 384 U.S. 333, 352–53 (1966). The Ninth Circuit rejected a finding of presumed prejudice due to pretrial publicity where the news reports at issue "focused on relaying mainly evidence presented at trial." *Murray v. Schriro*, 882 F.3d 778, 805 (9th Cir. 2018).

Here, Defendant provides no evidence about the scope of dissemination of the Plaintiff's counsel's statements. In contrast to the negative media coverage that the State generated against the Plaintiff, the range of dissemination of the Plaintiff's counsel's statements was, invariably, but a drop in the ocean. Also, the timing of the media coverage, occurring when the Court has not set a trial date, has sufficiently attenuated any effect by delay to further reduce the likelihood of interference with a fair trial. Finally, the type of statements is not of the quality to jeopardize the parties' right to a fair trial. The Defendant is arguing about comments about the lack of evidence and Plaintiff's psychological symptoms that merely mirror not only the conclusion of the State court, but also the evidence presented. Under the totality of the circumstances, the Defendant has not satisfied the predicate requirement of the Local Rule.

Defendant's arguments imply that not only is voir dire ineffective to impanel an impartial jury but also that the jury will inevitably disregard the Court's final jury instructions as to "What is Evidence." (See 9th Cir. Model Instr. 1.9). The recent public commentary shows a broad spectrum of public opinion on this case. Plaintiff is confident that the court will conduct appropriate voir dire to ensure that fair and impartial jurors are selected to provide both parties a fair trial.

**Conclusion**

Based on all matters presented, the Court should deny the motion.

DATED this 11TH day of September 2020.

LAW OFFICE OF JASON LAMM

By:   /s/ Jason D. Lamm
      David J. Don
      *Attorney for Plaintiff Leslie Merritt, Jr.*

LAW OFFICES OF DAVID J. DON, P.L.L.C.

By: /s/ David J. Don
David J. Don
*Attorney for Plaintiff Leslie Merritt, Jr.*

**CERTIFICATE OF SERVICE**

I certify that on this 11th day of September 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Clerk of the Court
United States District Court, District of Arizona
Sandra Day O'Connor Courthouse
401 W. Washington St.
Phoenix, AZ 85003

Edward F. Novak, Esq.
Melissa Ho, Esq.
Jonathan G. Brinson, Esq.
Andrew Fox, Esq.
Polsinelli PC
One East Washington Street, Suite 1200
Phoenix, AZ 85004

enovak@polsinelli.com; mho@polsinelli.com, jbrinson@polsinelli.com
Attorneys for Defendant State of Arizona, Heston Silbert, Christopher Kalkowski, Frank Milstead, Ken Hunter, Kelly M. Heape, Jennifer Pinnow, Anthony Falcone

By: /s/ David J. Don
David J Don