**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie A. Merritt, Jr., | No. CV-17-04540-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Defendant State of Arizona has filed a renewed motion to restrict Plaintiff and his counsel from making extra-judicial comments about this case to the press. Doc. 385. The motion is fully briefed, and the Court held a hearing on September 17, 2020. The Court will preclude Plaintiff's counsel from making further extra-judicial comments to the media about this case or the state court proceedings, as specified below. The Court will not permit the depositions of attorney Jason Lamm or Plaintiff's father, or instruct Plaintiff that any further comments will result in the loss of a jury trial, as Defendant requests. The Court will determine appropriate remedies if this order is violated.

Having watched Mr. Lamm's August 17 and 18, 2020 interviews on Good Morning Arizona (3TV/CBS 5), the Court agrees with Defendant that Mr. Lamm made comments that present a "substantial likelihood of material prejudice" to the trial. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991); *see* LRCiv 83.8(a), ER 3.6(a). Mr. Lamm offered opinions about two key issues in this case – the lawfulness of Plaintiff's arrest and

Plaintiff's alleged damages – when he made the following statements during the interviews (see Doc. 385 at 14-16):

August 17, 2020 Interview

- "There's no evidence, there was no evidence from day one" (at 1:40-43);
- "While a court may clear you, the internet doesn't" (at 2:17-22);
- "The I-10 freeway shootings is a phenomenon that Leslie Merritt is still going to have to live with for the rest of his life, no matter what a judge says" (at 2:27-35) (this statement is also replayed in the prelude to the August 18 interview (at 4:35-50)).

August 18, 2020 Interview

- "I can't believe we've been talking about this for five years, still no evidence" (at 1:27-32);
- To obtain a clearance under A.R.S. § 13-4051, a defendant has "the burden of proof of showing that they were wrongfully arrested" (at 2:05-15);
- "While a court order is really significant, . . . you can't scrub the internet," and Governor Ducey's "We got him!" tweet "doesn't get erased" (at 2:53-3:18);
- "This young man is going to have to live with this the rest of his life" (at 3:28-31);
- Plaintiff "lives with this still every day of his life, there's not a day he doesn't think about it, he still has nightmares, . . . he's still paranoid that someone's gonna kick his door in because it already happened once for crimes he didn't commit" (at 4:35-50).

While the state court's notation of clearance was newsworthy, the Court does not accept Mr. Lamm's assertion that he was responding to media inquiries "solely in his capacity [as a criminal defense attorney] legitimately to counteract the undue prejudicial effect on Mr. Merritt of persistent negative statements." Doc. 391 at 3. Mr. Lamm's position as counsel for Plaintiff cannot be so easily compartmentalized. He knows a trial

is approaching in this case and he fully understood that his statements about Plaintiff would be directly relevant to key issues in the trial and would be widely disseminated.

Mr. Lamm asserts that "the ethical rules permit and the legal rules require a lawyer 'to protect a client from the substantial undue prejudicial effect of *recent* publicity not initiated by the lawyer or the lawyer's client.'" *Id*. at 5 (quoting ER 3.6(c); emphasis added). But he cites no recent publicity about this case. The published statements and "media campaign" that he references are years old. *Id*. at 5-6. Mr. Lamm's recent statements that bear directly on this case were not "justified and required responses to the public allegations of Defendants and others." *Id*. at 6. Nor were the statements "confined to and incorporated [sic] only items already in the public record, as required under LRCiv 83.8(a)." *Id*. at 7.

"The Court is empowered to issue a restraining order prohibiting trial participants from communicating with the media where 'excessive trial publicity' endangers the fairness of the judicial process." *Mizioch v. Montoya*, No. CV10-01728-PHX-JAT, 2011 WL 4900033, at *6 (D. Ariz. Oct. 14, 2011) (quoting *Levine v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 764 F.2d 590, 600-01 (9th Cir.1985)); *see also* Local Rule of Civil Procedure 83.8(b) (stating that "[i]n a widely publicized or sensational case" the Court "may issue a special order [prohibiting extrajudicial statements] similar to that provided for by Rule 57.2(f), Local Rules of Criminal Procedure"). The Court finds that Mr. Lamm's press statements present a "substantial likelihood of material prejudice" to the trial, which is now only weeks away. *Gentile*, 501 U.S. at 1075. "[T]his type of publicity has a greater potential for prejudice than publicity months in advance of trial." *Levine*, 764 F.2d at 598. The Court accordingly will enter an order limiting further comments. The Court is confident that at trial any existing prejudice can be eliminated through the use of a juror questionnaire, careful voir dire, and clear jury instructions.[1]

---

[1] Plaintiff cites *Beasley v. Glenn*, 520 P.2d 310, 311 (1974), for the proposition that the "Arizona legislature expressed specific concern during the passage of legislation (that was codified as A.R.S. § 13-4051), with the 'economic and personal harm resulting to an individual' for a crime he did not commit." *Id*. But Beasley did not address the propriety of extra-judicial statements about such harm where the defendant brings a civil suit.

3

During the hearing on this motion, Plaintiff's counsel offered to agree, on behalf of themselves and Plaintiff, not to talk to the press before trial. This certainly would eliminate any risk of further prejudice, but as far as a court order is concerned, the Ninth Circuit made clear in *Levine* that the order must be drawn narrowly to address the issues raised by pretrial publicity. "[T]he district court must determine which types of extrajudicial statements pose a serious and imminent threat to the administration of justice in this case. The district court then must fashion an order specifying the proscribed types of statements." *Id.* at 599. The Court will specify the proscribed statements below.

The Facebook post by Plaintiff's father is also troubling. He stated that the superior court judge declared in the notation of clearance that Plaintiff "was not only LEGALLY INNOCENT BUT WAS ALSO WRONGFULLY ARRESTED as the Arizona I-10 shooter." (The post is displayed during the August 17 interview on Good Morning Arizona at 1:21.) (Emphasis in original.) This was a direct comment on a central issue in this case: whether Plaintiff was wrongfully arrested. But Plaintiff's father is not a lawyer in this case, and the Supreme Court has made clear that greater regulations can be placed on lawyers' pretrial statements because of the unique role they play in our judicial system. "Lawyers representing clients in pending cases are key participants in the . . . justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct." *Gentile*, 501 U.S. at 1074; *see also id.* ("Because lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative."). The Court will not at this time enter an order restraining the pretrial statements of Plaintiff's father, but if he makes further statements that threaten the fairness of the trial, Defendant may renew its request with the Court. *See* LRCiv. 83.8(b) ("In a widely publicized or sensational case" the Court "may issue a special order [prohibiting extrajudicial statements] similar to that provided for by Rule 57.2(f), Local Rules of Criminal Procedure"); LRCrim 57.2(f) ("In a widely publicized or sensational criminal case, the Court . . . may issue a special order governing

4

such matters as extrajudicial statements by parties *and witnesses* likely to interfere with the rights of the accused to a fair trial by an impartial jury.") (emphasis added).

Finally, the Court concludes that depositions of Mr. Lamm and Plaintiff's father are not necessary to address the issues raised by Defendant's motion.

**IT IS ORDERED:**

1. Between now and the end of trial, Plaintiff and Plaintiff's counsel are ordered not to make statements to the press, or cause such statements to be made by others, that (a) concern the legitimacy of Plaintiff's arrest or the charges against him; (b) concern the consequences of his arrest and indictment, including his alleged injuries and damages; or (c) comment on the conduct of Defendant or others in arresting and detaining Plaintiff.

2. Defendant's motion (Doc. 385) is **granted in part and denied in part** as set forth above.

Dated this 17th day of September, 2020.

*David G. Campbell*
David G. Campbell
Senior United States District Judge