**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Leslie A. Merritt, Jr.,

       Plaintiff,

v.

State of Arizona, et al.,

       Defendants.

No. CV-17-04540-PHX-DGC

**ORDER**

The Court held an extended conference call with the parties on October 15, 2020, on the record, regarding the admissibility of evidence that Plaintiff made a phone call to his grandfather from Glendale, Arizona, at 11:04 a.m. on August 29, 2015 (the "Subject Call"). Plaintiff asserts that the call is exculpatory because it was made between two of the alleged freeway shootings that day – one at 11:03 a.m. and the other at 11:05 a.m. – and could not have been made if he was the shooter. Plaintiff seeks to admit evidence of the call to support his assertion that Defendant lacked probable cause to arrest him at 6:47 p.m. on September 18, 2015. Defendant denies that it knew of the Subject Call when it arrested Plaintiff.

Because the existence of probable cause and the validity of Plaintiff's arrest must be based on information known to arresting officers at the time of the arrest, the Court concluded during the conference call that evidence of the Subject Call would be relevant only if Plaintiff could present evidence sufficient to support a reasonable jury finding that

Defendant knew of the Subject Call at the time of the arrest.  If Plaintiff cannot show that Defendant knew of the call, then the call is not relevant to whether Defendant had probable cause at the time of the arrest.  Both parties agreed with this conclusion.

The Court's conclusion aligns with Federal Rule of Evidence 104.  That rule provides that "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).  "When the relevance of evidence depends on whether a fact exists" – in this case, whether Defendant knew of the Subject Call at the time of Plaintiff's arrest – "proof must be introduced *sufficient to support a finding* that the fact does exist." *Id.* 104(b) (emphasis added).  The Supreme Court has explained how this rule is to be applied:

> the trial court neither weighs credibility nor makes a finding that the [proponent of the evidence] has proved the conditional fact by a preponderance of the evidence.  The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.

*Huddleston v. United States*, 485 U.S. 681, 690 (1988).

The Court accordingly set a schedule for the parties to present all evidence on whether Defendant knew of the Subject Call at or before 6:47 p.m. on September 18, 2020. The parties have completed that briefing.  Docs. 429, 431, 434.  The Court concludes that Plaintiff has satisfied the factual predicate needed to make the Subject Call relevant to his false arrest claim.  The Court will rule on any other objections to the evidence at trial.

The Court will address each item of evidence and provide a conclusion at the end.

1.     Plaintiff presents evidence that Defendant, on September 9, 2015, received a "cell tower dump" showing mobile phone traffic "within a five-mile radius of various freeway shootings at the approximate time of their occurrence."  Doc. 429 at 3.  Plaintiff asserts that his cell number – 480-532-3937 – was not in the cell tower dump.  *Id.* at 4.  He further asserts that once Defendant learned his cell number, it "knew that his phone was not near the scene of the shootings." *Id.* at 4.  But even if these assertions are true, they do not show that Defendant knew of the Subject Call from Glendale on August 29, 2015.

Plaintiff does not assert that the Glendale location of the call was in the area covered by the cell tower dump.

2.      Plaintiff asserts that on September 10, 2015, Detective Falcone applied for another cell tower dump that "primarily duplicated the data produced on September 9, 2015," but added the BMW shooting.  *Id*. at 5.  Plaintiff again argues that "when the Defendant learned of Plaintiff's phone number before his arrest, [it] also knew that his phone was not near the scene of the BMW shooting." *Id.*  Again, this evidence does not show that Defendant knew of the Subject Call from Glendale on August 29, 2015.

3.      Plaintiff cites a log maintained by Defendant on the day of his arrest, September 18, 2015.  *See* Doc. 429-2.  Plaintiff notes that an entry at 9:25 a.m. includes his phone number, showing that Defendant had the number by that time.  *Id.* at 4.  Plaintiff highlights an entry at 12:17 p.m. which states that "480 POS phone [h]as not been turned on all day per Verizon." *Id*. at 6.  Plaintiff argues that this entry shows Defendant was monitoring the use of his phone that day, knew the phone had a Verizon account, and knew it was an inexpensive flip phone, suggesting that Defendant had obtained additional information about the phone from Verizon.[1]

Plaintiff particularly focuses on an entry at 1:22 p.m. indicating that Sergeant Mapp, one of the investigators, had "rec'd records on 480 and going through it now." *Id*. at 7.  Plaintiff argues that his phone number was the only 480 number being investigated (something Defendant does not dispute), so this entry had to relate to his phone.  He asserts that Mapp was reviewing records of his calls at this time.

Defendant responds that Plaintiff has no information about what records Mapp was reviewing.  (Plaintiff notes in reply that Defendant has never produced the documents Mapp was reviewing.)  Defendant argues that Plaintiff does not cite any deposition testimony from Mapp confirming Plaintiff's assertion that the records being reviewed by

---

[1] Plaintiff asserts that the acronym "POS" means "piece of sh-t," reflecting that officers working the case knew Plaintiff had an inexpensive flip phone.  Plaintiff provides no citation for this assertion, but Defendant does not dispute it.  *See* Doc. 431.

Mapp included the Subject Call.  Defendant asserts that nothing in the log indicates Mapp was looking at historical call records, rather than current records for Plaintiff's phone.

4.    Plaintiff cites a one-page document from Verizon Wireless, titled Surveillance Confirmation Form, dated September 18, 2015.  The document shows a request by ATF Special Agent Livingstone for location information related to the phone.  Doc. 429-5 at 2.  The form includes a time entry of 3:38 p.m.  Plaintiff asserts that this shows Defendants had location information for his phone on the day of his arrest.

Defendant assets that the form reflects real time surveillance of Plaintiff's phone.  Defendant notes, for example, that the information is "PR/TT."  *Id*.  Defendant asserts, without citation to evidence, that this refers to a pen register/trap and trace investigation, which obtains only real time call information.  Defendant asserts that this real time monitoring of Plaintiff's phone would have been the reason agents could say the phone had not been turned on by mid-day, and that it does not show Defendant had any historical information that would include the Subject Call.

5.    Plaintiff asserts that Phoenix Police Commander Edward DeCastro, who was also working on the investigation, went to Defendant's Emergency Operations Center on September 18, 2015.  DeCastro testified that he spoke with Lieutenant Colonel Ken Hunter.  Although he was somewhat uncertain on everything he was told and by whom, he remembered learning that the investigators had identified the gun used in the shootings.  Doc. 434-3 at 3-4.  He further testified:  "They said that they had something about GPS on the car, I believe, or phone on the – and that they were in the process of trying to establish some sort of surveillance on him and anybody else that was involved.  And 'him' being Merritt."  *Id*. at 4.  He later clarified:  "I was told that they had GPS on his phone that – that put him near the scenes, I believe, is what the – is what they said."  *Id.* at 5.

Plaintiff asserts that this testimony shows Defendant, on the day of his arrest, had location information from his phone.  There are two problems with this argument.  First, DeCastro does not say that Defendant had historical call information, only that it had GPS information.  Even if true, this does not show that Defendant knew of the Subject Call from

4

August 29, 2015.  Second, the information DeCastro recalled appears to be incorrect.  Plaintiff himself notes that the cell tower data obtained near the freeway shooting sites did not include his phone.  Thus, it appears Defendant did not have GPS data placing his phone near the shootings.  And even if it did, such evidence would say nothing about the Subject Call.

6.      Plaintiff cites a report completed by FBI Special Agent Geoffrey Young, which specifically addressed the location of the Subject Call.  *See* Doc. 429-10.  But Plaintiff himself asserts that "[t]he report was dated Tuesday, September 22, 2015," several days after his arrest.  Doc. 429 at 8.  The report does not show that Agent Young had this information before Plaintiff's arrest.[2]

7.      Plaintiff cites anticipated testimony from his grandfather and aunt who will testify about the call he made on August 29, 2015.  This evidence, of course, says nothing about whether Defendant knew of the call before Plaintiff was arrested.

8.      Plaintiff notes that Agent Livingstone obtained a court order on September 18, 2015, at 1:56 p.m., which sought "all incoming and outgoing calls" from Plaintiff's phone.  Doc. 431-1, Ex. C at 32-33.  But the return for this order, signed by the judge who issued the order, indicates that Livingstone executed the order on September 19, 2015, the day after Plaintiff's arrest.  Doc. 431-1 at 59.  The return is dated September 22, 2015.  *Id.*

Plaintiff attempts to show that the information was actually received on September 18, 2015 by citing a screenshot of information provided by Defendant to one of its experts.  *See* Doc. 434-2 at 1.  The screenshot includes a file name for "Incoming" and "Outgoing" cell information that includes the following numbers:   2015_09_18-14_56_31.291."  *Id*.  Plaintiff surmises that this shows the information was received at 2:56 p.m. (14:56 hours) on September 18, 2015.

---

[2] Plaintiff seems to argue that this evidence would at least be admissible to show that Defendant had this information during the six-day damages period in this case, which spans September 18-24, 2015.  But Plaintiff does not develop this argument.  He cites no authority suggesting that a claim for false arrest can arise midway through an incarceration that began with a lawful arrest.  If Plaintiff intends to pursue the September 22, 2015 argument, he must present further analysis and authority.

**Conclusion.**

As noted above, the Court's task is not to weigh the evidence or make credibility determinations. The Court must instead decide whether Plaintiff has presented sufficient evidence for a reasonable jury to find that Defendant knew of the Subject Call before 6:47 p.m. on September 18, 2015.

Much of the evidence presented by Plaintiff – the cell tower dumps, testimony of DeCastro, Agent Young's report, and the testimony of Plaintiff's grandfather and aunt – does not support a finding that Defendant knew of the Subject Call before the arrest.

Evidence that arguably supports such a finding includes the following: Defendant had Plaintiff's cell number on the morning of September 18, 2015; Defendant referred to the phone as a "POS" phone, suggesting it had more information about the phone that just the 480 number; Sergeant Mapp was reviewing "records" on Plaintiff's cell number at 1:22 p.m. that day; Defendant has never disclosed the information Mapp was reviewing, in the criminal case or this case; the Surveillance Confirmation Form shows that Defendant was obtaining information directly from Verizon on the day of the arrest; and the file name on electronic information Defendant later provided to its expert contains numbers that could correspond with 2:56 p.m. on September 18, 2015.

To be sure, this is neither clear nor convincing evidence that Defendant knew of the Subject Call before Plaintiff's arrest. But that is not the test. The Court must determine whether any reasonable jury could make such a finding by a preponderance of the evidence. Although it is a close question, the Court concludes that a reasonable jury could make such a finding. Before Plaintiff's arrest, Defendant knew his cell number, knew something about his phone, was in communication with Verizon, and reviewed "records" about his phone that likely came from Verizon and have never been produced by Defendant. Depending on the tenor and credibility of other evidence presented during the trial, a reasonable jury might find from this evidence that Defendant knew of the Subject Call

1 | before Plaintiff's arrest.  The Court therefore will not exclude evidence of the Subject Call
2 | on relevancy grounds.
3 |       Dated this 22nd day of October, 2020.

David G. Campbell
Senior United States District Judge