Jason D. Lamm (018454)
Law Office of Jason Lamm
6245 North 24th Pkwy, Ste. 208
Phoenix, AZ 85016-2030
Tel: (602) 222-9237
Fax: (602) 222-2299
Email: jlamm@cyberlawaz.com

David J. Don (016462)
LAW OFFICE OF DAVID J. DON, PLLC
301 E. Bethany Home Rd., Suite B-100
Phoenix, Arizona 85012
Tel: 480-948-1212
Fax: 480-696-7756
Email: david@azcivilrights.com

*Attorneys for Plaintiff Leslie A. Merritt, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| Leslie A Merritt, Jr., a single man, | ) Case No.: CV17-4540-PHX-DGC |
|---|---|
| Plaintiff, | ) |
| vs. | ) **MOTION FOR JUDGMENT** |
|  | ) **NOTWITHSTANDING THE** |
|  | ) **VERDICT AND NEW TRIAL** |
| State of Arizona, et al. | ) |
|  | ) **(Oral Argument Requested)** |
| Defendants. | ) |

Under Rules 50 and 59 of the Federal Rules of Civil Procedures, Plaintiff Leslie Merritt, Jr. moves this Court to vacate the Judgment (Doc 478) filed on November 17, 2020, and grant him a judgment of liability notwithstanding the verdict and a new trial. These motions are supported by the attached Memorandum of Points and Authorities.

**Memorandum of Points and Authorities**

**1.    The motion's procedural foundations**

Leslie A. Merritt, Jr. moves the Court to vacate the Judgment (Doc. 478) and to grant a new trial because:

- The verdict was against the weight of ballistic evidence and is contrary to Arizona law on probable cause.  Fed. R. Civ. P.50(a)(1) and 59(a)(1)(A),

- The verdict was inconsistent with the evidence and controlling Arizona law on probable cause. Fed.R.Civ.P. 50(a)(1).

- The verdict was against the weight of the evidence and is contrary to Arizona law on dissipating probable cause.  Fed. R. Civ. P. 59(a)(1)(A),

- The verdict was based on unduly prejudicial character evidence and contrary to the weight of the evidence.  Fed.R.Civ.P. 59(a)

**2.    The State failed to produce a reliable scientific ballistic identification to establish probable cause.**

The trial testimony showed the State had grossly overstated the certainty of its purported ballistic identification and, instead, that it presented ballistic evidence inconsistent with the accepted scientific consensus. The science of ballistic identification purports that a well-trained, experienced examiner using the accepted methodology can reach a ballistic conclusion to a level of a "practical certainty." Exhibit 1, Trial Testimony (TT) of John Maciulla at 1346:8-10. Using the industry-standard theory of identification adopted by the Association of Firearms and Toolmark Examiners (AFTE), the odds of two well-trained

experienced examiners coming to different conclusions is a "practical impossibility." *Id.* at 1355:18-21.

"In firearms analysis, examiners attempt to determine whether ammunition is or is not associated with a *specific* firearm based on toolmarks produced by guns on the ammunition."[1] [emphasis added]. "It has been consistently demonstrated that when the AFTE Theory of Identification is properly applied, examiners are able to conduct quality, accurate analysis."[2] Implicit within the notion that an examiner's conclusion of ammunition being produced from a "specific" firearm is the foundational underpinning that any conclusion reached must not be subject to multiple interpretations in order to be both valid and "accurate." *Id.*

The industry-standard, reflected in the AFTE Range of Conclusions, permits four categories of accepted findings: identification, elimination, inconclusive, and unsuitable for examination. Exhibit 2, Declaration of Haag at ¶ 4. These conclusions are mutually exclusive to one another. *Id.* at ¶ 5.

The State's claim of probable cause to arrest the Plaintiff rested on a purported scientific ballistic identification of the Plaintiff's firearm to bullets found at the crime scenes, and that they were made to a level of practical certainty. In communicating his results to Sergeant Trevor Graff hours before the Plaintiff's arrest, Kalkowski told him he had identified Plaintiff's gun as being "a 100% match"

---

[1] https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_forensic_science_report_final.pdf at p. 104 (emphasis supplied) (last visited December 15, 2020).

[2] https://afte.org/uploads/documents/AFTE-PCAST-Response.pdf at p.2.

to the weapon that fired all four of the evidentiary bullets. Exhibit 3, Graff TT at 87:9-88:5. Kalkowski's claim of a "100% match" caused the Defendant to claim probable cause to arrest "as but for Mr. Kalkowki's opinion of an alleged match, there would be no other evidence based on which to arrest Mr. Merritt[.]" *Id.* at 120:23-121:1

During discovery, the Defendant's ballistic expert, John Maciulla, confirmed that the four possible conclusions regarding ballistic identification are "mutually exclusive" to one another. Exhibit 4, Maciulla Depo. Vol 1 at 45:12-21. Plaintiff's expert, Lucien Haag, likewise testified that "the mutual exclusivity of the range of conclusions has been in existence" even before the AFTE formally implemented them in 1992. Exhibit 5, Haag TT at 205:17-22.

Assuming the ballistic identification was made to a level of practical certainty, the Court ruled that the purpose of the trial was for the jury to "resolve[] the serious issue raised by the timing of the gun's pawn and the tire's rapid loss of air." Doc. 278 at 9:20-21 (citing Docs. 264 at 6-8, 273 at 2-3)).

However, at trial, the State's ballistic testimony reflected a position that did not adhere to the accepted scientific consensus. Both Kalkowski and John Maciulla testified that the categories of the AFTE Range of Conclusions are not mutually exclusive. Maciulla testified that it is both "reasonable" and reliable science for two different examiners to come to two distinctly different conclusions when examining the same evidence. Exhibit 1, at 1352:10-18.

As a result, the State's ballistic evidence contradicts the accepted scientific consensus and permits no level of certainty. If two well-trained, competent examiners can reasonably reach different conclusions, as the State contends, a ballistic identification cannot be made to a level of a "practical certainty." Instead, the State's position "greatly undermines[s] the scientific reliability and integrity of any conclusions reached under this notion." Exhibit 2, at ¶ 8.

This testimony represented the *first time* in Maciulla's career that he had ever claimed that "another reasonable examiner could find inconclusive when [he] ha[s] claimed an identification" and that the AFTE Ranges of Conclusion are not mutually exclusive to one another. Exhibit 1, at 1346:11-15.[3]

The State's evidence that a ballistic identification is one of several correct possibilities eliminates the conclusion's scientific reliability. Based on discovery conducted, at the time of summary judgment, "[b]oth parties asserted that ballistics evidence is highly reliable with a very low error rate." Doc. 278 at 7, fn2. In ruling on Defendant's Motion for Summary Judgment, the Court commented that

---

[3] Maciulla and other DPS firearms examiners routinely testify in criminal trials about identification of firearms on behalf of the prosecution. Maciulla's testimony in this case, though, shows that identifications made by DPS firearms examiners may also reasonably be interpreted as inconclusive, thus establishing reasonable doubt. But in these same criminal cases, DPS examiners testify that their results are highly accurate. See Doc. 327. It is fair to question if DPS will now go back to prosecutors and advise them of their change in position so that criminal defendants affected by this new-found theory can pursue post-conviction relief.

"credible scientists have raised serious questions about the reliability of ballistics evidence. ..." *Id.*.[4]

At trial, Defendant's counsel knew that the State's ballistic evidence was contrary to scientific consensus and could not be offered to a degree of practical certainty, such that it should never have been presented under Rule 702. If the Defendant disclosed this information, the Court might well have precluded Maciulla's opinions, particularly as the Court had commented on the reliability of ballistics evidence. Doc. 278 at 7, fn 2.[5]

Scientific evidence must be reliable to be admissible. Under Rule 702, an expert may offer "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

Absent evidence of reliable ballistic identification, admissible under Rule 702, the only reliable evidence of a ballistic conclusion was Plaintiff's evidence from

---

[4] Defendant sought to preclude any mention of the very study upon which the Court was referring to, in an anticipatory effort to hamper Plaintiff from arguing about the uncertainty of ballistic identifications and shield their unreliable opinions from Rule 702 scrutiny; yet this is what Defendant did at trial.

[5] The Court found disputed material facts on probable cause because "[b]oth parties assert that ballistics evidence is highly reliable with a very low error rate." (Doc. 278 at 7, fn 2). Defendant never disclosed the degree of unreliability of its ballistic conclusion. Plaintiff would have taken a different position and the Court would have then been required to determine the (un)reliability of ballistics evidence to rule on the motion.

Lucien Haag of an inconclusive result. Given the centrality of the ballistic evidence to the argument for probable cause, the Court should find that the State cannot establish probable cause as a matter of law. Without a material factual dispute, the Court should now enter judgment notwithstanding the verdict on liability under Rule 50 and grant a new trial under Rule 59.

**3. The verdict is inconsistent with Arizona law, which has determined the absence of probable cause to arrest and imprison Leslie Merritt, Jr.**

On August 13, 2020, the Maricopa County Superior Court ruled, under A.R.S. § 13-4051, that the State had "wrongfully arrested, indicted or otherwise charged" Leslie Merritt, Jr. in the I-10 Freeway Shootings. See Doc 401-2. The state court judgment is final under Arizona Rules of Civil Procedure 54(c). The state court has also rejected the Defendant's arguments in its motion to intervene. No matters are pending before the state court and no appeal was filed.

The state court's finding of Merritt's factual innocence was necessary for the ruling under A.R.S. § 13–4051. The term "wrongfully" encompasses not only unlawful and illegal arrests but also arrests "characterized by unfairness or injustice." *See State v. Mohajerin*, 226 Ariz. 103, 107–08, 244 P.3d 107, 111–13 (Ariz. Ct. App. 2010). To determine whether an arrest is "wrongful," the trial court must consider not only whether probable cause existed during the arrest but also whether the petitioner was factually innocent of the crimes for which he was arrested. *Id.* at 109, ¶ 19. *See also Benderra v. State*, 2018 WL 1321500, at *2 (Ariz. Ct. App. Mar. 15, 2018).

The Superior Court judgment does not indicate whether the Court granted a Notation of Clearance based on the wrongfulness of the State's arrest, charges, or both. However, the imprecision is immaterial because the State's position in the federal case is that the evidence supporting the claim of probable cause to arrest is the same as the evidence at the time of charging. (*See* Joint Pretrial Statement, Doc 334 at 9, Issue 2. ("The evidence known to the arresting officers at the time of Merritt's arrest was not materially different than (sic) the evidence presented to the Grand Jury."). Regardless, the component of the Court's ruling is a finding of the petitioner's innocence. Under settled Arizona law, the State had no probable cause to arrest or imprison Leslie Merritt for the I-10 Freeway Shootings. The verdict, therefore, contradicted Arizona law. The Court should enter judgment on liability, under Rule 50, and grant a new trial, under Rule 59.

**4.    The evidence shows the State did not seek to release Merritt from custody after probable cause dissipated.**

Even if probable cause existed to arrest the Plaintiff, the evidence unequivocally demonstrated that probable cause dissipated before the state court Grand Jury indictment on September 22, 2015.

Before arresting Plaintiff on September 18, 2015, Defendant failed to "resolve[] the serious issue raised by the timing of the gun's pawn and the tire's rapid loss of air." Doc. 278 at 9:20-21 (citing Docs. 264 at 6-8, 273 at 2-3). Specifically, the Plaintiff's gun was pawned on Sunday, August 30, 2015, at 5:31 p.m. (Trial Exhibit 3), and the BMW's left front tire rapidly lost air at about 9:45 p.m. that same

night. "[I]f Plaintiff's gun could not have fired the BMW bullet, then it could not have fired the other three bullets if one accepts Kalkowski's conclusion—as Defendants did—that a single gun fired all four bullets." Doc. 278 at 13:1-3 (citing Doc. 265 ¶¶ 27, 34; Doc. 270 at 10-11).

Trial Exhibit 1, a map generated by the Scottsdale Police Department on September 22, 2015, was received and adopted by the Defendant before the Grand Jury indicted Plaintiff on September 24, 2015, and reflects that the BMW shooting occurred on Sunday, August 30, 2015, at 9:45 p.m. It also placed the Plaintiff in Glendale when the Escalade and Bus shootings occurred at 11:03 a.m. and 11:05 a.m., respectively. DPS analyst Tracy Foster confirmed that Exhibit 1 represented these facts. Exhibit 6, Foster TT at 1080:21-1081:1.

Trial Exhibit 13, an FBI-generated mapping of the Plaintiff's phone's historical cell-site (GPS) data at the time of the shootings, dated September 22, 2015, was received by Defendant on September 22nd, 23rd, or 24th, 2015–before the Grand Jury indictment on September 24, 2015. *Id.* at 1088:8-21; 1089:16-19. Trial Exhibit 13 clarified to Defendant, before Plaintiff's arrest, that he was in Glendale at the time of the first two shootings.

DPS knew of the factual impossibility of Merritt's presence at a crime scene and his gun's use in any crime. Captain Mapp reviewed Exhibit 13 and testified that "a DPS employee … or another law enforcement official working with DPS knew *before* Mr. Merritt was arrested based on historical cell site date (sic) that was received before Mr. Merritt's arrest that at 11:04 a.m. on Saturday morning,

August 29th, Mr. Merritt's phone, the 480 number we just saw on the pawn slip (Trial Exhibit 5) pinged back to a cell tower right next to his home in Glendale." Exhibit 7 Mapp TT at 323:3-23 (emphasis supplied).

The jury was instructed that:

> If facts discovered during an investigation cause the totality of the facts to fall below the level required for probable cause, then officers have a duty to conduct further inquiry and reestablish probable cause before arresting a person. A person may not be arrested, or must be released from detention, if previously established probable cause has dissipated and the officers have not reestablished probable cause.

Doc. 461 at 14.

The Defendant presented no evidence of its having conducted any further inquiry, re-establishing probable cause, or even attempting to have the Plaintiff released from detention after receiving Exhibits 1 and 13 on September 22, 2015. The undisputed record shows that Defendant failed to provide evidence to establish probable cause to continue the Plaintiff's imprisonment between September 22nd and September 24th, 2015. The Court should, therefore, set aside the jury's verdict for the Defendant and enter judgment in favor of the Plaintiff on the claim of false imprisonment.

**5.  A new trial is warranted because of errors in the presentation and admission of undisclosed profile evidence.**

Rule 59 authorizes a trial judge to grant a new trial if the verdict is based upon false evidence or to prevent a miscarriage of justice. *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

At trial, for the first time, the Defendant floated several new theories supporting its contention of probable cause. The State offered testimony from criminal analyst Tracy Foster to show that Merritt fit the Freeway Shooter's alleged criminal profile. A new trial is warranted based on three significant errors in the presentation and admission of Foster's testimony.

First, Defendant violated disclosure rules, the Court's MIDP Order (Doc. 3), and pre-trial trial agreements in presenting Foster's testimony about indicators. Before taking the stand, the Court ordered that the State was precluded from asserting that Leslie Merritt fit any non-disclosed "profile" of the Freeway Shooter – something which would have required expert testimony. Omitted from the Defendant's disclosure was any discussion of a "profile" of the Freeway Shooter or an expert to provide "profile" evidence.

Defendant's counsel, however, did an end-run around the Court's ruling and expanded on its disclosure by eliciting opinions from Foster that Merritt fit many so-called "indicators" of the Freeway Shooter that were "red flags basically everywhere." Exhibit 6, at 1025:20-22; 1029:13-14. Although all the testimony about "indicators" was non-disclosed expert evidence, Defendant marched Foster through various records of the Plaintiff, giving the imprimatur of expertise to explain these records and other events irrelevant to the element(s) of any crime(s). Defense counsel elicited from Foster how the Plaintiff fit the "indicators" (profile) based on his previous police contacts and his Facebook posts showing alleged anti-government, anti-law enforcement, and pro-gun sentiments. Exhibit 6, at 1073:14-

17, 1074:11-19, 1027:1-3. She further testified that the Plaintiff was the only individual who "had what we were looking for as far as indicators and past law enforcement contacts and social media posts." *Id.* at 1029:5-7, 1059:17-21.

Notably absent from the State's discovery responses about the factual basis of its affirmative defense is any discussion about Merritt's so-called "anti-government," "anti-law enforcement" or "pro-gun" views, police contacts, and alleged anger issues, which featured so prominently at trial, as well as no discussion of "indicators" or comparisons to other gun owners. Exhibit 8, Defendant's Response to Non-Uniform Interrogatory #5. The injection of these new issues substantially and unduly prejudiced the Plaintiff with inadmissible character evidence by unfairly limiting his ability to cross-examine Foster.

Second, the Defendant presented testimony immaterial to any permissible jury issue because it assumed a reality that did not exist. None of the so-called "indicators" suggested by Foster related to an element of any crime. Exhibit 6, at 1076:1-9. Foster, herself, conceded that her testimony amounted to only "mere suspicion." *Id.* at 1076:21-22.

What was lost in Foster's testimony was any distinction between information that could form investigative leads and facts establishing probable cause to arrest. Defense counsel knew Foster had no information about any facts related to probable cause but had her testify to a precluded profile, thinly veiled under the guise of "indicators." Foster's testimony about "indicators" should have been

precluded because it was immaterial to any legitimate jury issue under Rules 401 and 403 and, also, inadmissible as expert opinion under Rule 702(A).

Under the Court's ruling, Foster should have been permitted only to provide facts known to DPS related to Facebook posting involving the Freeway Shootings. Defendant should never have been permitted to encourage the jury to infer that Merritt was the Freeway Shooter based on undisclosed expert testimony and character evidence.

Plaintiff does not dispute that trials are adversarial. But for the judicial system to work, litigants must be able to inherently trust that adversaries, particularly experienced trial lawyers, will act within the bounds of professionalism and good faith.

Given the prominence devoted to Foster's testimony, the jury reasonably presumed that the evidence represented crucial information. Foster's testimony encouraged the jury to place undue prominence on items irrelevant to the ostensible opinion about probable cause. The highly prejudicial effect was highlighted by Plaintiff's inability to present evidence of the real Freeway Shooter, Aaron Saucedo, or to corroborate Plaintiff's credibility with proof that he had made the phone call at 11:04 a.m., on August 29, 2015, to his grandfather in Florida.

Third, the unduly prejudicial effect of Foster's testimony was never adequately alleviated. While the Court's limiting instruction could minimize Foster's testimony's prejudicial nature, it could not eliminate its unduly prejudicial effect in the trial. (Doc 461 at No. 8). The result was a jury verdict that came back

within a few minutes without time for the jury to review the exhibits. Leslie Merritt is entitled to a new trial.

**Conclusion**

For these reasons, the Court should vacate the Judgment (Doc 478) filed on November 17, 2020, and grant a judgment of liability in favor of the Plaintiff, notwithstanding the jury's verdict, and order a new trial.

DATED THIS 16TH day of December, 2020.

LAW OFFICE OF JASON LAMM

By: /s/ Jason D. Lamm
David J. Don
*Attorney for Plaintiff Leslie Merritt, Jr.*

LAW OFFICES OF DAVID J. DON, P.L.L.C.

By: /s/ David J. Don
David J. Don
*Attorney for Plaintiff Leslie Merritt, Jr.*

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of December, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Clerk of the Court
United States District Court, District of Arizona
Sandra Day O'Connor Courthouse
401 W. Washington St.
Phoenix, AZ 85003

Edward F. Novak, Esq.
Melissa Ho, Esq.
Jonathan G. Brinson, Esq.
Andrew Fox, Esq.
Polsinelli PC
One East Washington Street, Suite 1200
Phoenix, AZ 85004

enovak@polsinelli.com; mho@polsinelli.com, jbrinson@polsinelli.com
Attorneys for Defendant State of Arizona, Heston Silbert, Christopher Kalkowski, Frank Milstead, Ken Hunter, Kelly M. Heape, Jennifer Pinnow, Anthony Falcone

By: /s/ Kathryn A. Miller
Kathryn A. Miller